PROVO STY, J.
The defendant board has charge of the wharves of the port of New Orleans. After advertisement for bids, it let to the plaintiff, a general contractor, who was the lowest bidder, the contract for the construction of the Pauline street wharf. The work to be done was shown by plans and specifications accompanying the contract, and may be said to have consisted of an inner part, along the bank of the river where the water was Shallower, and an outer part, further out in the stream. The board was to furnish the piles and lumber. Payment was to be made at 6% cents per lineal foot of piles driven, and $10.25 per 1,000 feet of lumber framed and placed. The cost of splicing and lagging the piles was to be reimbursed to plaintiff plus á profit of 15 cents on the cost. After about one-third of the inner part had been constructed, the defendant board, owing to disappointment in obtaining funds from the railroad for whose special use the wharf was being constructed, concluded not to construct the outer part, and so notified plaintiff. Plaintiff protested against this action, and gave notice that it would cause him a loss for which he would hold • the board liable. He went on with that part of the work which he was allowed to do, and continued to receive payments, in accordance with the terms of the contract, as the work progressed, and when he had finished, and after vain efforts towards amicable adjustment, brought this suit.
The theory of the suit as propounded by his counsel is that the defendant board canceled the contract by an exercise of the right conferred upon proprietors by article 2765 of the Civil Code, and that he is therefore entitled to recover of the defendant board the sum of the expenses incurred by him plus the profit he would have made if he had been allowed to do all the work called for by the contract. The said article 2765 reads:
“The proprietor has a right to cancel at pleasure the bargain he has made, even in case the work has already been commenced, by paying the undertaker for the expense and labor already incurred, and such damages as the nature of the case may require.”
*786 [1 ] The defendant board claims that it had the right to curtail the work as it did under the following clauses of the contract:
“II. The work to be done under this contract shall be executed under the immediate direction and supervision of A. 0. Bell, engineer of the purchaser, or his representative, and the said engineer shall be the sole judge of and shall decide all questions or disputes that may arise under this contract with regard to the interpretation of specifications, quality of material or workmanship or any other dispute or question arising hereunder, and his decision shall be binding upon the parties hereto.
“III. The engineer acting for the purchaser reserves the right to make such changes or modifications in the said plans or specifications, or both, as he may deem advisable, but the contractor shall not proceed with these changes without a written order from the engineer, approved by the purchaser; this order shall stipulate the work to be done under the changed modified or altered conditions, the difference in time allowance and the difference in the price, whether in favor of or against the contractor. The contractor shall under no circumstances have the right to increase, diminish or alter the work to be done under this contract; nor shall any claim for extra work be allowed or entertained, either in time allowance or in cost, unless the increase, decrease, or extra work shall have been ordered in the same manner as above required for changes, modifications, etc., to the plans and specifications.”
“XV. Neither the contractor nor his sureties shall be released from the whole or any part of the obligations hereby assumed by reason of any ■change in the amount, nature, scope, character or extent of the work, or in any plan or specification, or in the mode or time of payment, or by the consent of any subcontractor, or by any extension of time or indulgence granted to the contractor, even though any and all of said acts be without the knowledge and consent of the contractor or his sureties, unless such release be expressly made in writing by the purchaser.”
We do not so interpret these clauses. We think the changes which according to clause 15 were not to have the effect of releasing the contractor or his surety are those contemplated by clauses 2 and 3, namely, changes to be made by the engineer, not by the board; in other words, engineering modifications, such as ordinarily have to be made in the course of the execution of the plans of almost every work of any magnitude; and. certainly not such as the one in question in this case, by which the contract might be converted into a plainly losing one for the contractor.
[2] We do not agree with plaintiff that in coneeling part of the work the defendant board was acting under said article 2765, and that the measure of its liability is that provided for in that article. The defendant board had no idea' of acting under said article, but under the terms of the contract. The right which is conferred by this article is to cancel the contract, not to modify it. Neither in this state nor elsewhere has the proprietor the right to modify the contract at his will — modify it either in the kind or amount of work to be done or the amount to be paid. This article 2765 confers upon him the right to cancel, or, in other words, put an end to, the contract in toto — not to modify it. And neither the defendant board nor plaintiff understood that the contract was put an end to. Plaintiff continued in the execution of it, and continued to receive payments under it.
[3, 4] Plaintiff had the right to require the board to choose between either letting the contract go on as a whole, or else canceling it as a whole; he did not assert this right, but went on with the contract, reserving his right to indemnity. The latter right he has, but it is based on the breach of the contract by the defendant board, and not upon any supposed canceling of the contract as a whole; and the measure of the damages must be accordingly, and not as for a contract canceled under said article. That measure is the profits he would have made, and which he was deprived of the opportunity of making. In arriving at these profits the contract must, as a matter of course, be dealt with as a whole. That is to say, the profits must be found by deducting the total amount it would have cost plaintiff to complete the contract from the total amount he would have been entitled to receive under the contract had he completed *788 It; ’ and, inasmuch as the impossibility of knowing the exact figures has been brought about by the fault of the defendant board, the figures will have to be arrived at as best can be done from the available data; such as the plans and the estimates in the specifications.
[5] The learned counsel of the defendant board contends that by going on with the contract, and receiving payments under same, or, in other words, receiving benefits under same, the plaintiff acquiesced in the change thus made, and waived any right he might originally have had to complain.
We do not think so. Plaintiff duly protested, v and gave notice of his intention to hold the board liable. This intention was expressed in very polite and conciliatory terms, but was none the less positively and unmistakably communicated. And the going on with the work was the sensible and obvious thing to do in the interest of all parties concerned.
Perhaps, if the breach of the contract had been simply passive, plaintiff would have been under the necessity of putting the board formally in default; but, under the circumstances, the board having announced its inability to go on for lack of funds and its intention not to do so, we think that a formal putting in default was unnecessary, putting in default not being necessary in the presence of an acknowledged inability to perform and an announced intention not to do so.
[6, 7] Another defense is that the defendant board is prohibited by Act 270, p. 468, of 1910, from incurring any obligation for meeting which the necessary funds are neither on hand nor in prospect. This defense would go to the contract having been null originally and in toto, for a contract cannot be valid in part and null in part; and no pretense is made that the contract was originally null. And, in the second place, said act, from its terms, has application only to the governing authorities of municipalities and parishes, not to a political board like defendant.
[8] It is argued that plaintiff lost money on the inner part of the work, and would therefore have lost money on the outer part which was the more difficult and expensive part, and hence has suffered no damage. But that argument loses sight of important facts. Eor greater economy, plaintiff had purchased all the materials he would need for the entire work, and brought them to the spot; and the canceling of part of the work left him with a corresponding part of these materials on hand. In making the estimates for his bid, he counted upon the initial, or preparation cost, say, some $24,000, being spread over the entire contract, and not confined to a part. The long piles ranging from, say, 85 to 130 feet, were not to be driven any deeper into the earth than the short ones of, say, 35 to 50; and, if the cost of putting them in position was not to be greater than that of putting the short piles, the profit would be enormously greater, since he was being paid by the lineal foot, both for the part out of the ground as for the part in the ground.
But when we come to consider from the present record what profits, if any, plaintiff was deprived of, we tackle a brain-racking and vain task.
In the petition, plaintiff’s losses are said to have been “$21,756.65 as shown in detail by Exhibit E annexed hereto,” and the following is a copy of this Exhibit E:
“Statement of loss in detail caused by abrogation of contract:
Piles pulled, braced labor & lumber.. > 553.20
Cutting piles...................... 16.62
Painting beads.................... 100.67
Unloading & trucking.............. 309.85
&
Equipment ....................... 1,082.04
Bolts & nails.....................
Watchman & timekeeper........... 556.65
Ins. bond & int.................... 55.13
Profit............................ 1,101.18
............$7,041.22 Total amount of loss
*790 “Statement of loss in detail caused by abrogation of contract:
Labor & coal......................$ 2,518.76
Unloading & spotting.............. 145.92
Hauling & erection................ 234.00
Watchman & timekeeper............ 521.76
Insurance bond. & int.............. 121.20
Equipment ....................... 4,960.59
Profit ........................... 1,883.10
Profit on splice piles............... 2,100.00
Total amount of loss...........$12,485.43
“Statement of loss sustained on account of •work not anticipated in original contract: Placing temporary anchors, etc......$ 2,230.00
“Summary of Loss.
As per page 1, on lumber.........$ 7,041.22
As per page 2, on piling........... 12,485.43
As per page 3, work not anticipated 2,230.00
$21,756.65.”
According to this, the expenses, plus the profits, were $21,756.65.
On page 72 of plaintiff’s brief, the testimony given by plaintiff is reproduced as showing the expenditures and profits, as follows:
Total expenditures................$55,470.38
Profit on lumber.................. 3,175.30
Profit on piling................... 5,283.00
Amt. due on force acct.............. 91.75
$64,020.43
On page 19 of plaintiff’s supplemental brief a computation said to be made from plaintiff’s Exhibit 15, which is said to be correct, shows as follows:
Total expenditures.................$60,048.61
Deduct amts, not properly charged.. 1,875.03
Total expended on the work.........$58,173.58
On page 24 of the brief is reproduced from plaintiff’s testimony a statement of the actual cost of the piling part of the work as taken from his books, showing this cost to have been $24,611.27; and on page 38 of the brief a statement from the same sources shows the cost of the other part of the work to have been $28,133.56. The sum of these amounts is $52,744.63, and not any one of the above-named amounts, all said to be the actual cost of the work. These apparent discrepancies may be reconcilable; but we have been unequal to the task, and the brief has afforded no assistance in that direction.
In place of testifying by questions and answers, plaintiff was allowed to make in his office and from his books and accounts a narrative statement of his whole case in detail, and this statement was sworn to by him as being- correct, and was allowed to go in evidence as his testimony. With that statement, in order to arrive at some idea of what the probable profits of plaintiff were, we have wrestled in vain. It may be very clear to plaintiff, and may be so to any expert in such matters; but to us it is practically meaningless. Learned counsel may understand it, and, if so, we will afford them an opportunity to explain it on application for a rehearing. In the meantime, as we are inclined to believe that plaintiff did suffer a loss for which he should be indemnified, we will remand the ease, for ascertainment by new evidence, and by amendment of pleadings if necessary, what profits, if any, he was deprived of by the change in question in the contract.
We will add, however, for the behoof of plaintiff’s learned counsel, that we are much impressed by the argument appearing on page 9 of defendant’s supplemental brief, to the effect that if, as testified by plaintiff, the total cost was $55,470.38, and the cost of the piling part was $24,011.27, and the cost of the framing and placing of lumber was $30,839.50, or at the rate of nearly $13 per M. feet, the cost of framing and placing the lumber on the part of the work that was not canceled could not have been much less, if any; and that upon the record as now made up the decided preponderance of the evidence is to the effect that the work of placing the long piles in position in the outer part of the work would have been much more expensive than that of placing the shorter piles in the work that was completed.
The judgment appealed from is set aside, *792 and the case is remanded to be proceeded with in accordance with the views herein expressed, with leave to offer new evidence, and, if necessary, amend pleadings.