**PRINCIPE COMPANIA NAVIERA, S. A.**

v.

**BOARD OF COMMISSIONERS OF the PORT OF NEW ORLEANS.**

**Civ. A. No. 71–177.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

Oct. 4, 1971.

Michael K. Clann, Chaffe, McCall, Phillips, Burke, Toler & Sarpy, New Orleans, La., for plaintiff.

Cornelius G. Van Dalen, Deutsch, Kerrigan & Stiles, New Orleans, La., for defendant.

HEEBE, District Judge:

To sue and not to be sued—that, insists the Board of Commissioners is the answer. The question in this admiralty case is whether the Board of Commissioners can avoid liability for a maritime tort it is alleged to have committed by pleading sovereign immunity. This question has troubled both the state and federal courts in Louisiana since the Dock Board was created [1] and has led to a maze of occasionally puzzling decisions, the general tenor of which is that

1. The Board of Commissioners for the Port of New Orleans was created by Act No. 70 of 1896.

the Board may be sued in contract[2] but not in tort.[3] We, on the other hand, hold that the Board is not entitled to the defense of sovereign immunity in a tort action and therefore deny the Board's motion to dismiss.

### A. ELEVENTH AMENDMENT

Any discussion of sovereign immunity must begin with the Eleventh Amendment:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

■ While the Amendment only speaks of suits in law or equity, the Supreme Court early held that the Amendment also applied to suits in admiralty. Ex Parte Madrazzo, 32 U.S. (7 Pet.) 627, 8 L.Ed. 808 (1833). Since the Eleventh Amendment operates as a jurisdictional bar, limiting the courts' broad grant of judicial power found in Article III of the Constitution, it has long been settled that a court does not have jurisdiction to entertain a suit in admiralty against a state or state agency which is an integral part of the state

government. Ex Parte State of New York, No. 1, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921).

■ Because the Eleventh Amendment bars otherwise meritorious causes of action, it has been construed narrowly. Suits against counties, municipalities and other lesser governmental agencies and corporations which have an existence independent of the state have not been held to be within the purview of the Eleventh Amendment. County of Lincoln v. Luning, 133 U.S. 529, 10 S.Ct. 363, 33 L.Ed. 766 (1890); Metropolitan R. Co. v. Dist. of Columbia, 132 U.S. 1, 10 S.Ct. 19, 33 L.Ed. 231 (1890); Markham v. City of Newport News, 292 F.2d 711 (4th Cir. 1961); Adams v. Harris County, 316 F.Supp. 938 (S.D.Tex. 1970); S. J. Groves & Sons Co. v. New Jersey Turnpike Authority, 268 F.Supp. 568 (D.N.J.1967).

■ The Board of Commissioners has recently been recognized as having the status of a state agency with a separate legal identity from the State of Louisiana and not the status of a "second self" of the state. C. H. Leavell & Co. v. Board of Commissioners of the Port of New Orleans, 424 F.2d 764 (5th Cir. 1970).[4] Among the reasons cited by the

---

2. George A. Fuller Co. v. Coastal Plains, Inc., 290 F.Supp. 911 (E.D.La.1968); Prebensen & Blakstad v. Bd. of Commissioners, 241 F.Supp. 757 (E.D.La. 1965); United States v. Southern Scrap Metals Co., Ltd., unreported opinion in C.A. No. 6403 (E.D.La. March 26, 1965); Hartwig Moss Ins. Agency v. Bd. of Commissioners, 206 La. 395, 19 So.2d 178 (1944); Leon Irwin & Co., Inc. v. Bd. of Commissioners, 176 La. 13, 145 So. 123 (1932); Geary v. Bd. of Commissioners, 139 La. 781, 72 So. 245 (1916).

3. Hammond v. Bd. of Commissioners, unreported decision in C.A. 71–83 (E.D.La. May 6, 1971); Bd. of Commissioners v. Gypsum Transportation, Ltd., 209 So.2d 296 (La.App.1968), writ refused 252 La. 260, 210 So.2d 505, cert. den. 393 U.S. 938, 89 S.Ct. 302, 21 L.Ed.2d 275; Miller v. Bd. of Commissioners, 199 La. 1071, 7 So.2d 355 (1942); Fouchaux v. Bd. of Commissioners, 186 So. 103 (La.App.

1939), aff'd 193 La. 182, 190 So. 373, cert. den. 308 U.S. 554, 60 S.Ct. 112, 84 L.Ed. 466. *Contra*, Splendour Shipping & Enterprises v. Bd. of Commissioners, unreported decision in C.A. 70–787 (E.D.La.1970).

4. *But see*, Hartwig Moss Ins. Agency v. Bd. of Commissioners, 206 La. 395, 19 So.2d 178 (1944); Fouchaux v. Bd. of Commissioners, 186 So. 103 (La.App. 1939), aff'd 193 La. 182, 190 So. 373, cert. den. 308 U.S. 554, 60 S.Ct. 112, 84 L.Ed. 466; State ex rel. Tallant v. Bd. of Commissioners, 161 La. 361, 108 So. 770 (1926); Duffy v. City of New Orleans, 49 La.Ann. 114, 21 So. 179 (1896), all indicating that the Board is a second self of the state. Two interesting cases on this point are State of Louisiana v. Bd. of Commissioners, 153 La. 664, 96 So. 510 (1928), in which the sovereign state sued the Board, and Bd. of Commissioners v. Toyo Kisen Kai-

Fifth Circuit are the historical desire of the state to establish a separate agency removed from state politics, the provisions of the Enabling Act which, while not formally incorporating the Board, empowered the Board " * * * [to] have and enjoy all the rights, powers and immunities incident to corporations," § 2, Act 70 of 1896, and the broad powers to buy and sell property in its own name and to construct and/or operate numerous types of commercial structures granted the Board by La. Const. Art. 6, §§ 16.1, 16.3 and by La. Rev.Stat. § 34:21 et seq.[5] While these provisions do not expressly allow the Board to sue or to be sued, they do not expressly prohibit such suits, and the Board has on numerous occasions sued[6] and been sued. While the Fifth Circuit in *Leavell* only held that the Board was a sufficiently separate entity from the state to sustain diversity jurisdiction, we perceive no reason, nor has any been advanced by the Board, why different considerations should prevail for the sustaining of admiralty jurisdiction.

Since the Board of Commissioners is not the State of Louisiana, the Eleventh Amendment does not bar plaintiff's invocation of our admiralty jurisdiction.

## B. SOVEREIGN IMMUNITY

A party may be subject to a court's jurisdiction and still escape liability for his torts by invoking the doctrine of sovereign immunity. Based on the medieval notion that the king can do no wrong, sovereign immunity precludes a litigant from asserting an otherwise meritorious cause of action against a sovereign or a party with sovereign attributes unless the sovereign consents to the suit.

In recent years this doctrine has come into disfavor and has been severely restricted both by legislative action[7] and judicial decision.[8] A residue of immunity stubbornly clings to Louisiana jurisprudence and the Board urges this Court to apply a line of case which appears to clothe the Board with immunity for its alleged torts.[9]

sha, 163 La. 865, 113 So. 127 (1927), in which the court indicated that the prescriptive period not normally applicable to a sovereign was applicable to the Board.

5. The Board's broad powers are more fully set forth in George A. Fuller Co., Inc. v. Coastal Plains, Inc., 290 F.Supp. 911 (E.D.La.1968).

6. *See*, George A. Fuller Co., Inc. v. Coastal Plains, Inc., 290 F.Supp. 911 (E.D.La. 1968) ; Bd. of Commissioners v. M/V Gotama Jayanti, 274 F.Supp. 265 (E.D. La.1967), both cases considering the Board's power to sue in its own name.

7. *See, e. g.*, La.Const. Art. 3, § 35, allowing the legislature to waive the immunity of the state and its subdivisions by appropriate legislation. The Federal Tort Claims Act, 60 Stat. 812, 842 (1946), waives the immunity of the United States for many classes of lawsuits.

8. *See, e. g.*, Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949), (scope of immunity held by a governmental officer) *and* Parden v. Terminal Railway, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), (implied waiver by state of

immunity when entering federally regulated field).

9. See cases cited in fn. 3. It is not completely clear that the Board is immune from tort liability even under state law. While many cases dogmatically assert that the Board is immune from tort suits but not from contract suits, we perceive no reasons for this distinction. While it can be argued that one who enters into a contract incurs the obligation to be sued for its breach, United States v. Southern Scrap Material Company, Ltd., unreported decision in Adm. 6403 (E.D. La. March 26, 1965), it can likewise be argued that one who constructs a bridge incurs the obligation of being liable to those injured by his negligence. In fact this reasoning may even be more relevant in the tort area since a party contracting with another party that is immune from suit can consider the difficulty in enforcing the contract before entering into the contract while a party suddenly injured by another party's negligence has little opportunity to plan his conduct so as to avoid immune tortfeasors. Indeed, the Supreme Court in Keifer & Keifer v. R. F. C., 306 U.S. 381, 59 S. Ct. 516, 83 L.Ed. 784 (1939), concluded

■ It is well settled that an admiralty court in proper exercise of its jurisdiction does not defer to state law in determining whether a cause of action cognizable in admiralty can be asserted. Workman v. New York City, 179 U.S. 552, 21 S.Ct. 212, 45 L.Ed. 314 (1900). To hold otherwise would destroy the uniformity admiralty seeks since admiralty law would vary according to the often-conflicting laws of the several states. Workman v. New York, supra, at 558, 21 S.Ct. 212.

■ It is likewise settled that where an admiralty court has jurisdiction over the parties and subject matter, sovereign immunity will not defeat an otherwise meritorious lawsuit brought against a state agency for its alleged torts. Workman v. New York City, *supra*. In *Workman,* the Supreme Court rejected the attempt by the city, a municipal corporation, to bar the plaintiff's suit for damages occasioned by the city fire department's maritime tort by invoking the state rule holding the city immune from tort suits. The Court held that

"* * * in the maritime law, the public nature of the service upon which a vessel is engaged at the time of the commission of a maritime tort affords no immunity from liability in a court of admiralty, where the court has jurisdiction. This being so, it fol-

lows that as the municipal corporation of the city of New York, unlike a sovereign, was subject to the jurisdiction of the court, *the claimed exemption from liability* asserted in the case at bar, because of the public nature of the service upon which the fire-boat was engaged—even if such claim for the purposes of the case be conceded —*was without foundation* in the maritime law, and therefore afforded no reason for denying redress in a court of admiralty for the wrong which the courts below both found to have been committed." At 570, 21 S.Ct. at 219. (Emphasis added.)

This principle was recently reaffirmed in Adams v. Harris County, Texas, 316 F.Supp. 938 (S.D.Tex.1970) where the Court allowed the plaintiff to maintain his suit for tort damages caused by the alleged negligent operation of a county bridge in spite of Texas law (since amended) granting the county immunity from suit.[10]

This rule is based on the strong federal interest in uniformity of admiralty and on the desire to provide redress for wrongs suffered. In *Workman,* Mr. Chief Justice White pointed out that to engraft local doctrines of sovereign immunity onto admiralty law would lead to

"[t]he practical destruction of a uniform maritime law * * * [since if] the principles of the general mari-

that to draw a distinction in the doctrinal immunity between tort and contract "would make application of a steadily growing policy of governmental liability contingent upon irrelevant procedural factors. These, in our law, are still deeply rooted in historical accidents to which the expanding conceptions of public morality regarding governmental responsibility should not be subordinated." Even if the Board is immune from tort liability under state law, the Board may have waived this liability by building a bridge across a navigable water of the United States. Chesapeake Bay Bridge & Tunnel District v. Lauritzen, 404 F.2d 1001 (4th Cir. 1968); Adams v. Harris County, Texas, 316 F.Supp. 938 (S.D.Tex.1970). *Contra,* Red Star Towing & Transp. Co. v. Dept. of Transportation of N. J., 423 F.2d 104

(3rd Cir. 1970). *Cf.,* Parden v. Terminal Railway, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); Petty v. Tennessee-Missouri Bridge Comm., 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959).

10. In almost all the cases on this subject the Court has found, an admiralty court has never applied state immunity law to defeat an otherwise meritorious cause of action against an agency or political subdivision of the state. In re M/T Alva Cape, 405 F.2d 962 (2d Cir. 1969); Kelley Island Line & Transport Co. v. City of Cleveland, 47 F.Supp. 523 (N.D.Ohio 1942); 1 Benedict on Admiralty, § 216 (6 ed. 1940). *Contra,* Broward County, Fla. v. Wickman, 195 F.2d 614 (5th Cir. 1952) (holding that Florida County enjoys same immunity that state does).

**357**

time law giving relief for every character of maritime tort where the wrongdoer is subject to the jurisdiction of admiralty courts can be overthrown by conflicting decisions of state courts, it would follow that there would be no general maritime law for the redress of wrongs, as such law would be necessarily one thing in one state and one in another; one thing in one port of the United States and a different thing in some other port." 179 U.S. at 558, 21 S.Ct. at 214.

The law would likewise vary depending on whether, say, a vessel collided with a privately-owned bridge or similar maritime structure or a publicly-owned one.

To allow immunity would lead to another evil—the denial of justice.

"This must be the inevitable consequence of admitting the proposition which assumes that the maritime law disregards the rights of individuals to be protected in their persons and property from wrongful injury, by recognizing that those who are amenable to the jurisdiction of courts of admiralty are nevertheless endowed with a supposed governmental attribute by which they can inflict injury upon the person or property of another, and yet escape all responsibility therefor." At 559, 21 S.Ct. at 214.

This latter evil is clearly demonstrated by situations such as that in Board of Commissioners v. Gypsum Transp. Ltd., 209 So.2d 296 (La.App.1968), writ ref. 252 La. 260, 210 So.2d 505, cert. den. 393 U.S. 938, 89 S.Ct. 302, 21 L.Ed.2d 275, in which the court held that the Board could sue Gypsum for tort damages arising out of a maritime collision but disallowed Gypsum's counterclaim for its damages for the same collision because of the Board's immunity from suit.

 Other than the tottering, treadworn assertion that the sovereign can do no wrong, this Court can find no valid reasons supporting the doctrine of immunity sufficient to offset the strong reasons stated by the Supreme Court in *Workman* for not recognizing the state immunity doctrines in a court of admiralty. Since, for purposes of this motion, we assume that plaintiff's cause of action is meritorious, we refuse to defeat it by holding the Board of Commissioners immune from suit for their alleged torts. Accordingly, it is the order of the court that the motion of the Board of Commissioners to dismiss the complaint because the Board is immune from suit be, and the same is hereby, denied.