255 So.2d 869 (1971)
BOARD OF COMMISSIONERS of the PORT OF NEW ORLEANS, an Agency of the State of Louisiana
v.
SPLENDOUR SHIPPING & ENTERPRISES COMPANY, Inc., et al.
No. 4622.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 1971.
Concurring Opinion December 16, 1971.
Rehearing Denied January 10, 1972.
*870 Deutsch, Kerrigan & Stiles, Cornelius G. Van Dalen, New Orleans, for plaintiff-appellee.
Chaffe, McCall, Phillips, Toler & Sarpy, Paul A. Nalty and Leon Sarpy, New Orleans, for defendants-appellants.
Before LEMMON, GULOTTA and BOUTALL, JJ.
GULOTTA, Judge.
The question posed for our consideration is whether the Board of Commissioners of the Port of New Orleans, hereinafter referred to as the Dock Board, is immune from liability in tort under the doctrine of sovereign immunity of the state and, therefore, not amenable to suit.
This litigation arises out of a collision involving a vessel, S/S Ocean Splendour, owned by defendant company and the Florida Avenue Bridge which spans the Inner Harbor Navigation Canal (Industrial Canal) owned by the Dock Board.
The plaintiff filed suit against Splendour for the recovery of damages to the bridge and its related appurtenances caused by the accident. The defendant answered and reconvened for damages caused to the vessel alleging that the failure of the Dock Board to properly design, construct, maintain and repair the bridge and canal constituted an obstruction and hazard to navigation thereby impeding the safe passage of vessels in the channel. An exception of no right of action was filed to the reconventional demand alleging that the Dock Board is immune from suits in tort under the sovereign immunity of the state. The exception was maintained thereby dismissing the reconventional demand whereupon defendant took this devolutive appeal from that judgment.
Jurisdiction of this action is vested in the state courts under the provisions of 28 U.S.C. 1333, the "savings to suitors clause".[1]
Removal was sought by Splendour to the United States District Court to no avail and the matter was remanded to the Civil District Court.
Any immunity enjoyed by a state evolves from the 11th amendment of the United States Constitution:
"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
*871 It is conceded by Splendour that the State of Louisiana, as an entity, has the common law right of "sovereign immunity". However, appellant argues that the ultimate point as affects this appeal is whether the Dock Board is the State of Louisiana and thereby entitled to the same rights and protections of the State.
The Dock Board was created by Act 70 of 1896. Its provisions are found in Article 6, Sections 16 and 17 of the Louisiana Constitution and in LSA-R.S. 34:1-44. LSA-R.S. 34:21 sets forth the rights and powers of the board:
"The board of commissioners shall regulate the commerce and traffic of the port and harbor of New Orleans in such manner as may, in its judgment, be best for the maintenance and development thereof.
"It shall be the duty of the board to have charge of, and administer the public wharves, docks, sheds, and landings of the port of New Orleans which are owned and operated, or which may be purchased, acquired or operated by the board; to construct new wharves and other structures when necessary; to erect sheds and other structures on such wharves and landings; to place and keep these wharves and landings, sheds and other structures in good condition; to maintain proper depths of water at all such wharves and landings; to provide mechanical facilities for the use of such wharves, landings, sheds, and other structures; to provide light, water, police protection, and any other services for such wharves, landings, and sheds, as it may deem advisable; to finance, erect and operate all basins, locks, canals, and warehouse elevators; to charge for the use of the wharves, sheds, and other structures, for the use of all facilities administered by it, and for all services rendered by it, such fees, rates, tariffs or other charges as it may establish."
While it is well settled that the Dock Board does not enjoy immunity in contract, as the agreement to contract waives this immunity,[2] the situation is quite different in connection with claims arising out of a tort action.
This question of tort immunity has been the concern of both federal and state courts. An analysis of the decisions from both jurisdictions indicates that there are several recent decisions which are in conflict within the federal court in this district.[3] In Prebensen & Blakstad v. The Board of Commissioners, 241 F.Supp. 757, 758 (1965), the Court in discussing the subject of immunity, differentiated between the immunity in contract and tort and stated:
"First: Is the Board immune from tort actions? That this question must be answered in the affirmative is well supported by the decisions of the Louisiana courts. The Board has never been successfully subjected to an action in tort."
Judge Ainsworth concluded that the Board was not immune, however, in contract.
In the case of C. H. Leavell & Co. v. Board of Com'rs of Port of New Orleans, 424 F.2d 764, (5th Cir. 1970), the court held that the Dock Board as a state agency had a separate legal entity from the State of Louisiana for diversity jurisdiction purposes. The court concluded that since it was a separate entity from the state, diversity jurisdiction could be sustained. If *872 the court in that case had concluded that the Dock Board was merely a second self of the state, then federal jurisdiction would have been lacking. The court used significant language in its opinion at page 765:
"* * * If the Dock Board is merely a second self of the State of Louisiana, a matter to be determined according to State law, then federal jurisdiction is lacking. Central Stikstof Verkoopkantoor, N.V. v. Alabama State Docks Department, 415 F.2d 452 (5th Cir. 1969)" (emphasis ours)
Whether or not the Dock Board is a separate entity from the state and not the state is important. If it is the state, it enjoys immunity. If not, and it is a separate entity, it does not enjoy this immunity, even in tort. If the Dock Board is an agent of the state and as such is the state or the alter ego of the state, it is the state and enjoys the immunity from such suits in tort.
The state law, which is our primary concern in the instant case, as state law is controlling in this matter, appears to be less contradictory. In the case of State ex rel. Tallant v. Board of Com'rs, 161 La. 361, 108 So. 770 (1926), the Supreme Court of Louisiana concludes that the Dock Board is not a corporation but a state agency administering public property to advance the prosperity of the port.
The court in Fouchaux v. Board of Com'rs, 186 So. 103, 105 (Orl.App.1939); aff'd 193 La. 182, 190 So. 373 (1939); cert. den. 308 U.S. 554, 60 S.Ct. 112, 84 L.Ed. 466 (1939) said the Dock Board and State are one:
"As a matter of fact, the Dock Board seems to be recognized under the laws of this state as a little closer to the sovereignty than is an agency such as a municipality, or general agent given broad general powers. This agency, the Dock Board, is in effect the State itself. It is created for the purpose of doing one thing; that is, for the construction and operation of docks and wharves at the principal port of the State." (emphasis ours)
In the case of Miller, etc. v. Board of Com'rs, 199 La. 1071, 7 So.2d 355 (1942) the supreme court held that the Board of Commissioners of the Port of New Orleans is an agency of the state and therefore not amenable to a suit in tort. See also: Lamport & Holt, Limited v. Board of Com'rs of Port of New Orleans, 137 La. 784, 69 So. 174 (1915).
Moreover, this court in the case of Board of Com'rs of Port of New Orleans v. Gypsum Transportation, Ltd., 209 So.2d 296 (La.App. 4th Cir. 1968) writs refused, 252 La. 260, 210 So.2d 505, cert. den., 393 U.S. 938, 89 S.Ct. 302, 21 L.Ed.2d 275, involving a maritime tort wherein the question of liability was raised in a reconventional demand, as in the present matter, held that the Dock Board is an agency of the State of Louisiana and as such is immune from suit in tort. The reconventional demand was dismissed.
We find the conclusion reached in the Gypsum case to be sound. It is our opinion that the Dock Board as an agency of the State of Louisiana enjoys immunity in tort. We note further that the Louisiana Supreme Court denied writs and the United States Supreme Court refused certiorari. A reasonable interpretation of this action is that both the Louisiana Supreme Court and the United States Supreme Court found no error in the conclusions reached in that decision.
Appellant's contention, that the symmetry of maritime law in maritime proceedings is destroyed if the state law holding the Dock Board immune in tort is applied, is without merit. A determination that the Dock Board is immune in tort without its consent does not infringe upon the application of maritime concepts and maritime principles in the proceedings in state courts under the savings to suitors clause. There is no doubt that admiralty law is to be followed in the conduct of the proceedings.
*873 The United States Supreme Court in the case of In Re State of New York, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921) was confronted with the same contention. That court stated at pages 502 and 503, 41 S.Ct. at page 591:
"There is no substance in the contention that this result enables the state of New York to impose its local law upon the admiralty jurisdiction, to the detriment of the characteristic symmetry and uniformity of the rules of maritime law insisted upon in Workman v. New York City, 179 U.S. 552, 557-560, 21 S.Ct. 212, 45 L.Ed. 314; Southern Pacific Co. v. Jensen, 244 U.S. 205, 215, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann. Cas.1917E, 900; Union Fish Co. v. Erickson, 248 U.S. 308, 313, 39 S.Ct. 112, 63 L.Ed. 261; Knickerbocker Ice Co. v. Stewart, 253 U.S. 149, 160, 40 S.Ct. 438, 64 L.Ed. 834. The symmetry and harmony maintained in those cases consists in the uniform operation and effect of the characteristic principles and rules of the maritime law as a body of substantive law operative alike upon all who are subject to the jurisdiction of the admiralty, and binding upon other courts as well. Chelentis v. Luckenbach S. S. Co., 247 U.S. 372, 382, 384, 38 S.Ct. 501, 62 L.Ed. 1171. It is not inconsistent in principle to accord to the states, which enjoy the prerogatives of sovereignty to the extent of being exempt from litigation at the suit of individuals in all other judicial tribunals, a like exemption in the courts of admiralty and maritime jurisdiction."
The appellee raises arguments to the effect that the United States has never required the Dock Board to obtain permission for the construction, operation, or maintenance of the bridge and therefore there was never any waiver of immunity made by the Dock Board. We do not find this contention an issue in this matter and because of the views expressed herein above find no necessity to consider this argument. Furthermore, the motion to dismiss the appeal filed by appellee by reason of the fact that appellant's brief was not timely filed is also without merit. Untimeliness in the filing of briefs under our rules[4] causes the appellant to forfeit his right to argue but does not constitute grounds for dismissal of the appeal. Accordingly, the motion to dismiss the appeal is dismissed.
The judgment of the trial court in favor of plaintiff, the Board of Commissioners of the Port of New Orleans, dismissing the reconventional demand of defendant, Splendour Shipping Enterprises Company, based on plaintiff's exception of no right of action is affirmed at defendant's cost.
Affirmed.
LEMMON, Judge (concurring).
Although I agree that the Louisiana court-made rule of sovereign immunity probably controls in the factual situation presented in this case, I believe that (1) there was no rational or legal basis for the rule to ever exist in Louisiana, and (2) the rule has been so abrogated that to apply it in this case (or any other particular case) amounts to gross arbitrariness and discrimination.

BASIS OF THE DOCTRINE
At the outset I find it difficult to tell any litigant that he cannot recover for negligently inflicted damages because an English subject was not allowed to sue the King in the thirteenth century. Even if we had a King, I would never subscribe to the theory that he can do no wrong.
When this country declared its independence 195 years ago, it rejected the oppressive rules which drove our forefathers to settle this country. "It is hard to say why the courts of America have adhered to this relic of absolutism so long a time after America overthrew monarchy itself," declared *874 the Supreme Court of Michigan in Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1 (1961), which cast out sovereign immunity in that state. It is even more difficult for me to understand why the courts of Louisiana follow this doctrine, since Louisiana was never governed by English common law.
From a civil law approach, there is no express basis in our Constitution or statutes for this doctrine, but originally only a provision for a method of bringing an action against the state.[1] Therefore, this doctrine is a creature of our jurisprudence, one which has been riddled with exceptions and inequities. It is "an anachronism, without rational basis, and has existed only by the force of inertia."[2]
In my opinion the time has come to challenge the continued existence of this injudicious doctrine which crept into our case law.
Prior to the Eleventh Amendment, the Supreme Court of the United States in Chisholm v. Georgia, 2 U.S. 419, 2 Dallas 419, 1 L.Ed. 440 (1792) rejected sovereign immunity based upon the law of England, prefering to decide the issue on the Constitution as established by the people. That decision recognized that the people were sovereign without subjects. The court also questioned the equity of any other result:
"... a state like a merchant makes a contract. A dishonest state, like a dishonest merchant, wilfully refuses to discharge it: the latter is amenable to a court of justice: upon general principles of right, shall the former, when summoned to answer the fair demands of its debtor, be permitted, Proteus-like, to assume a new appearance, and to insult him and justice by declaring I am a sovereign state? Surely not."[3]
In State ex rel. Hart v. Burke, 33 La. Ann. 498 (1881), an early case adopting sovereign immunity in this state, the court declared that the judiciary was instituted to distribute justice among individuals, but the State was not subjected to the authority of the judiciary. This is nothing more than another way of saying that the king cannot be commanded to appear before his own court, a corollary to the "king can do no wrong" theory. That opinion cites the Magna Carta and makes the brash statement that it is an undeniable proposition that the sovereign cannot be sued in its own courts without its consent. And as the logical basis for this undeniable proposition, the court states:
"The principle is of such antiquity that the memory of man runneth not to the contrary."
It is self-evident, at least to me, that the rationale of this case and its progeny is properly relegated to feudal times and has no place in modern government or in a social structure which emphasizes the rights of the individual.
This rationale was that primarily followed by subsequent cases, but perhaps the most repugnant theory proposed to justify the doctrine is that the state cannot afford to pay the flood of claims and judgments which would be lodged against it. Stated otherwise, "it is better that an individual should sustain an injury than that the public should suffer an inconvenience".[4]
Such a theory (which is perpetuated by the result in this case) cannot withstand reason and has not justice for an end.
*875 "It is a basic concept underlying the whole law of torts today that liability follows negligence, and that individuals and corporations are responsible for the negligence of their agents and employees acting in the course of their employment. The doctrine of governmental immunity runs directly counter to that basic concept."[5]
"The whole doctrine of governmental immunity from liability for tort rests upon a rotten foundation. It is almost incredible that in this modern age of comparative sociological enlightenment, and in a republic, the medieval absolutism supposed to be implicit in the maxim, `the King can do no wrong,' should exempt the various branches of the government from liability for their torts, and that the entire burden of damage resulting from the wrongful acts of the government should be imposed upon the single individual who suffers the injury, rather than distributed among the entire community constituting the government, where it could be borne without hardship upon any individual, and where it justly belongs."[6]
To place the financial burden of negligent damages on the innocent victim of that negligence is social injustice at its worst. This oppression is magnified when it is considered that the innocent tort victim also bears the basic (tax) burden of financing the governmental agency which negligently caused his damages.

ABROGATION OF THE DOCTRINE
Since my views on sovereign immunity conflict with the long standing decisions of our Supreme Court, I have respectfully stated them in a concurring opinion. But I wonder if what is left of sovereign immunity, which is no longer enjoyed by the Department of Highways,[7] by Charity Hospital,[8] or by school districts,[9] and presumably by other agencies which have a "sue and be sued" clause in their governing statutes, is sufficient to stand as a jurisprudential doctrine.
Just as the concept of legislative consent provided in the Constitution has itself created inequities and injustices (by making the decision to grant consent a political issue), the recent cases involving the concept of waiver of consent have also produced illogical contradictions and distinctions.
The present case precisely illustrates the point. If pure sovereign immunity existed, we could with tongue in cheek tell the disenchanted tort victim (who apparently does not have the political muscle to obtain legislative consent), "Next time, chose an individual citizen as your tort-feasor." But the recent decisions removing the immunity from some state agencies result in further discrimination against this particular tort victim and proclaim, "Next time a tort is committed against you by a state agency, make sure it is an agency which has a `sue and be sued' clause in its governing statutes."
I cannot justify to the losing litigant in this case an explanation that if his claim were against the Department of Highways, he could pursue it, but since it is against the Dock Board (which does not have a "sue or be sued" clause), he cannot.
Indeed, if such a narrow interpretation were applied with equal fervor to the action brought by the Dock Board, we should deny the agency's suit because it has no express power to sue. To achieve a logical *876 result, we must assume the power to sue. George A. Fuller v. Coastal Plaines, Inc., 290 F.Supp. 911 (E.D.La.1968). Consequently, it is only just and reasonable to assume liability to be sued.[10]

CONCLUSION
We should not perpetuate injustice in the name of a non-existent sovereign. It is manifestly unfair to force an individual citizen to bear the burden of governmental torts, especially when the governmental activities are daily becoming more diversified. It is equally unjust to allow use of the courts to seek redress for governmental torts only to those who obtain legislative authority. Finally, the injustice is magnified when use of the courts is allowed only for claims against certain state agencies. The time appears right for the complete overturning of governmental immunity, and this is an issue we should squarely face.
The doctrine of governmental immunity in Louisiana is not an affirmative constitutional guarantee. Reymond v. State, Department of Highways, 255 La. 425, 231 So. 2d 375 (1970). On the other hand, our Constitution does guarantee that "All courts shall be open, and every person for injury done him in his rights, lands, goods, person or reputation shall have adequate remedy by due process of law and justice administered without denial, partiality or unreasonable delay."[11]
The courts of other states have repudiated the doctrine.[12] By statute, the United States and England have effectively done so, as have France and Germany. In my opinion, the Louisiana courts should re-evaluate the vestige of the decadant doctrine and uproot the last branches of this medieval vine which are still strangling a few unfortunate litigants, who are being denied their undeniable right to use of the courts.
NOTES
[1] "The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

"(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.
"(2) Any prize brought into the United States and all proceedings for the condemnation of property taken as prize."
[2] The following Louisiana Supreme Court cases upheld suits in contract against the Dock Board. Geary v. Board of Com'rs, 139 La. 781, 72 So. 245 (1916); Hartwig Moss Ins. Agency v. Board of Com'rs, 206 La. 395, 19 So.2d 178 (1944); Leon Irwin and Co. v. Board of Com'rs of New Orleans, 176 La. 13, 145 So. 123 (1932).
[3] See: Hammond v. Board of Com'rs, et al., C.A. 71-83, wherein the Dock Board was held immune from suit in tort; and Principe Compania Naviera, S.A. v. Board of Commissioners of the Port of New Orleans, 333 F.Supp. 353, wherein the court came to an opposite conclusion that the Dock Board is amenable to suit in tort.
[4] Uniform Rules of the Courts of Appeal in and for the State of Louisiana, Rule IX, Section 11.
[1] See Article III, Section 35, which was amended in 1946 and in 1960, and now empowers the legislature to waive the immunity of the state from suit and from liability.
[2] Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P. 2d 457 (1961).
[3] For an excellent historical discussion, see Stone, Governmental Immunity in Tort. A Waning Privilege, 1 Boletin Mexicano de Derecho Comparado 407 (1968) at p. 411.
[4] Russell v. Men of Devon, 100 Eng.Rep. 359, 362, (K.B.1788), often quoted in cases in this country.
[5] Molitor v. Kaneland Community Unit District No. 302, 18 Ill.2d 11, 163 N.E. 2d 89 (1959).
[6] Barber v. City of Santa Fe, 47 N.M. 85, 136 P.2d 480, 482 (1943), quoting 75 A.L.R. 1196.
[7] Herrin v. Perry, 254 La. 933, 228 So.2d 649 (1969).
[8] White v. Charity Hospital of Louisiana in New Orleans, 239 So.2d 385 (La.App. 4 Cir. 1970).
[9] Terrebonne Parish School Board v. St. Mary Parish School Board, 242 La. 667, 138 So.2d 104 (1962); State through Dept. of Highways v. Ouachita Parish School Board, 242 La. 682, 138 So.2d 109 (1962).
[10] "To sue and not to be suedthat, insists the Board of Commissioners is the answer." Principe Compania Naviera, S.A. v. Board of Commissioners of the Port of New Orleans, 333 F.Supp. 353, Oct. 4, 1971.
[11] La.Constitution, Art. 1, § 6.
[12] Evans v. Board of County Comm'rs of the County of the El Paso, 482 P.2d 968 (Colo.1971); Smith v. State, 93 Idaho 795, 473 P.2d 937 (1970); Parish v. Pitts, 244 Ark. 1239, 429 S.W.2d 45 (1968); Haney v. City of Lexington, 386 S.W.2d 738 (Ky.Ct.App.1964); Stone v. Arizona Highway Comm., 93 Ariz. 384, 381 P.2d 107 (1963); Holytz v. Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618 (1962); Spanel v. Mounds View School District, 264 Minn. 279, 118 N.W.2d 795 (1962); Muskopf v. Corning Hosp. Dist., supra; Molitor v. Kaneland Community Unit Dist., supra; Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957); Barber v. City of Santa Fe, supra.