Eugene CONNONE, Plaintiff,

v.

TRANSPORT DESGAGNES, INC.,
Defendant and Third Party
Plaintiff,

v.

LORAIN COUNTY COMMISSIONERS,
Third–Party Defendant.

No. 1:95–CV–1714.

United States District Court,
N.D. Ohio,
Eastern Division.

Aug. 13, 1997.

John H. Distin, Lisa R. Buffett, Squires, Sanders & Dempsey, Cleveland, OH, Mark A. Ropchock, Roetzel & Andress, Akron, OH, for Eugene Connone.

Douglas R. Denny, Robert T. Coniam, Ray, Robinson, Carle, Davies & Snyder, Cleveland, OH, for Transport Desgagnes & Harry E. Hubert.

Gregory A. White, M. Robert Flanagan, Office of the Prosecuting Attorney, Elyria, OH, Todd M. Raskin, Kimberly A. Brennan, Mazanec, Raskin & Ryder, Solon, OH, for Lorain County Commissioners.

### MEMORANDUM & ORDER

O'MALLEY, District Judge.

Third-party defendants, the Lorain County Commissioners, move this Court pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings. For the reasons set forth below, the defendants' Motion for Judgment on the Pleadings is **DENIED**.

### Factual Background

On August 6, 1994, the vessel M/V Catherine Desgagnes allided with the Erie Avenue Bridge while proceeding toward Lake Erie on the Black River. Several other allissions had occurred in the vicinity of the bridge that day. Some of those allissions damaged small pleasure vessels and docks owned by Eugene Connone. On August 4, 1995, Connone filed an action for negligence and gross negligence against Transport Desgagnes, owner of the M/V Catherine Desgagnes. Transport Desgagnes ("Desgagnes") in turn filed a third-party complaint against the Lorain County Commissioners. Lorain County owns and operates the Erie Avenue Bridge. Desgagnes' third-party complaint alleges that the Lorain County Commissioners ("County") negligently delayed opening the bridge and that, as a result, Desgagnes is entitled to indemnity and contribution from the County. The Commissioners moved to dismiss Desgagnes' claims, under the theory that Ohio Revised Code Chapter 2744, Ohio's Political Subdivision Tort Liability Act, grants it immunity from Transport's claims.

### Legal Standard

This Court possesses admiralty jurisdiction over Desgagnes' claims because they are maritime in nature.[1] Pursuant to Fed.

---

1. Article III § 2 of the United States Constitution grants federal courts judicial power over "all cases of admiralty and maritime jurisdiction." Similarly, the Judiciary Act of 1789, codified as

R.Civ.P. 12(c), the Commissioners have moved this Court for judgment on the pleadings, on the grounds that Desgagnes' complaint fails to state a claim upon which relief may be granted. A Rule 12(c) motion based upon these grounds should be determined according to the same standards employed to determine a Rule 12(b)(6) motion. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir.1987). A court must consider all well-pleaded claims in a light most favorable to the plaintiff when deciding a Rule 12(b)(6) motion. *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir.1980). If the plaintiff's pleadings fail to prove any "set of facts in support of his claim which would entitle him to relief," then they must be dismissed. *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### Analysis

Jurisdiction over the Lorain County Commissioners in this Court is proper and is not contested.[2] The Commissioners contend, however, that O.R.C. Chapter 2744 grants them immunity from tort liability arising out of the County's operation of the Erie Avenue Bridge. O.R.C. Chapter 2744, entitled "Political Subdivision Tort Liability," states in relevant part:

§ 2744.02(A)(1):

... Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a government or proprietary function.

A county bridge commission is considered a political subdivision of Ohio for the purpose of Chapter 2744. 1988 Ohio Op. Atty. Gen. No. 88–098 (Dec. 28, 1988). The County's operation of the Erie Avenue Bridge qualifies as a "governmental function." *Id.* If Chapter 2744 controls the resolution of the issue, therefore, the County and its Commissioners are entitled to immunity from Desgagnes' tort claim and must be dismissed from this action.

Chapter 2744 does not control the court's decision in this case, however; federal maritime law does. Admiralty Courts traditionally rely upon federal maritime common law, rather than state statutory law, in assessing claims of sovereign immunity. *See, e.g., Workman v. Mayor, Alderman, and Commonality of New York*, 179 U.S. 552, 21 S.Ct. 212, 45 L.Ed. 314 (1900). And, under federal maritime law, it is well established that a political subdivision of a state may not invoke sovereign immunity as a defense against maritime tort claims. *Id.* at 558, 21 S.Ct. at 214. In *Workman* the Supreme Court held that the City of New York was liable to the owner of a vessel struck by a city fire boat on the way to extinguish a fire. The Court rejected the notion that, as a municipal corporation engaged in an admittedly governmental function, the city was immune from suit by the vessel owner:

[I]t becomes manifest that the decisions of this court overthrow the assumption that the local law or decisions of a State can deprive of all right to relief, in a case where redress is afforded by maritime law and is sought to be available in a cause of action maritime in its nature and deter-

28 U.S.C. § 1333, grants federal courts jurisdiction over "(1) Any civil cases of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." An alleged tort is considered maritime in nature if the injurious consequences occurred on navigable waters. *Executive Jet Aviation, Inc. v. City, of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972); *Hess v. United States*, 361 U.S. 314, 318, 80 S.Ct. 341, 345, 4 L.Ed.2d 305 (1960). Therefore, Desgagnes' claim properly invokes the admiralty jurisdiction of this Court. None of the parties contest application of maritime law to the facts of this case.

**2.** A claim against government employees in their official capacity is effectively a claim against the

government itself. *Brandon v. Holt*, 469 U.S. 464, 472, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985). The 11th Amendment grants immunity to individual states in suits at law or in equity. It is well established, however, that 11th Amendment immunity does not extend to counties, cities, and other municipal corporations. *Principe Compania Naviera, S.A. v. Board of Commissioners of Port of New Orleans*, 333 F.Supp. 353, 354 (E.D.La.1971); *Metropolitan R. Co. v. District of Columbia*, 132 U.S. 1, 10 S.Ct. 19, 33 L.Ed. 231 (1889). Therefore, jurisdiction over Lorain County and the Lorain County Commissioners in this Court is proper.

mined in a court of admiralty of the United States.

Admiralty courts consistently have rejected claims of governmental immunity on the strength of *Workman.* *See, e.g., Principe Compania Naviera, S.A. v. Board of Commissioners of Port of New Orleans,* 333 F.Supp. 353 (E.D.La.1971) (Board of Commissioners of Port of New Orleans not permitted to invoke the defense of sovereign immunity to defend against maritime tort claims); *O'Keefe v. Staples Coal Co.,* 201 F. 131 (D.C.Mass.1910) (county liable for its negligent operation of a drawbridge, despite a Massachusetts law granting sovereign immunity to municipal subdivisions); *Steel All Welded Boat Co. v. City of Boston,* 18 F.Supp. 421 (D.C.Mass.1937) (Municipalities not immune in admiralty from liability arising from their negligent operation of a drawbridge). Courts in this jurisdiction have been no exception, adhering to the principle that claims of sovereign immunity born out of state law are no defense to a maritime tort action. *See Selim v. Naviera Aznar, S.A.,* 1976 A.M.C. 673 (N.D.Ohio 1976); *Kelley Island Lime & Transport Co. v. City of Cleveland,* 47 F.Supp. 533 (N.D.Ohio 1942).

The Commissioners do not dispute that federal maritime law typically prohibits the application of state sovereign immunity principles. Instead, they argue that, even in a maritime context, a district court has the discretion to resort to state law for purposes assessing a governmental claim of sovereign immunity. The Commissioners rely solely upon the decision in *Kelley Island Lime & Transport Co. v. City of Cleveland, supra,* for this proposition.

In *Kelley Island,* the owner of a sandsucker sought to recover for damages to the vessel caused by an underwater obstruction in the Cuyahoga River. Although O.R.C. Chapter 2744 did not yet exist, the City of Cleveland invoked the Ohio common law doctrine of sovereign immunity as a defense. The court in Kelley Island held that an admiralty court "may afford relief to an injured party for a maritime tort, regardless of the governmental capacity of a municipal corpo-

ration." (emphasis added) *Kelley Island,* 47 F.Supp. at 540. The Commissioners contend that use of the word "may," in lieu of the word "must" or "shall," indicates that the *Kelley Island* court theoretically approved application of state sovereign immunity law in a maritime tort case.

The Commissioners place too much emphasis upon a single word, while ignoring the opinion which envelopes it. The paragraphs immediately following the passage cited discuss the "several decades" of case law in agreement with the principle that state sovereign immunity law does not apply in admiralty cases. *Kelley Island,* 47 F.Supp. at 540. In addition, more recent authority confirms that federal maritime law continues to preempt state law on this point. *See, Selim v. Naviera Aznar, S.A., supra.* In *Selim,* a vessel collided with scaffolding hanging from a city owned bridge in Toledo, Ohio. Several bridge painters were injured and filed an action against the owner of the vessel, who then impleaded the City of Toledo. The court refused to extend sovereign immunity to the City of Toledo, concluding that "[i]t has long been the rule in admiralty that common law notions of sovereign immunity or state statutes establishing such are not bars to a suit against an independent subdivision of a state." *Selim,* 1976 A.M.C. at 683. Nothing in these cases, or in the extensive body of authority upon which they rely, implies that this Court, sitting in admiralty, has the discretion to do anything other than to reject the Commissioners' arguments and deny their motion to dismiss.[3]

**IT IS SO ORDERED.**

---

**3.** If the Court did have the discretion to decide which law to apply, moreover, it would have little trouble concluding that the federal interest in uniformity in the application of admiralty law and in promoting a maritime policy which rejects the application of sovereign immunity outweighs Ohio's admitted interest in preserving the fiscal integrity of its political subdivisions.