19 So.2d 178
HARTWIG MOSS INS. AGENCY, LIMITED,
v. BOARD OF COM'RS OF PORT
OF NEW ORLEANS.

No. 37336.

June 26, 1944.

Chaffe, McCall, Burns, Toler & Phillips, of New Orleans, for defendant-appellant.

Paul B. Habans, and Warren O. Coleman, both of New Orleans, for plaintiff-appellee.

ODOM, Justice.

The plaintiff is a corporation, a licensed insurance agent or insurance broker engaged in business in the City of New Orleans. It alleged that on April 7, 1931, it entered into a written contract with the Board of Commissioners of the Port of New Orleans, known as the Dock Board, under which contract the Dock Board employed and appointed it as the Board's exclusive agent, for a term of five years from said date, to handle the writing and renewing of all the Board's insurance. It annexed to, and made part of, its petition a copy of the contract dated April 7, 1931.

It alleged that it diligently, promptly, and faithfully performed all of its duties and obligations under the said contract, and was always able, ready, and willing to carry out its promises and obligations thereunder. It further alleged that on June 12, 1934, about three years and two months after the contract was executed, the Dock Board informed it in writing that it did not wish to renew certain insurance policies which would expire about August 31, 1934, and that it had arranged to place said insurance with another agency; that on December 12, 1934, the Dock Board wrote petitioner that it demanded immediate cancellation of all policies listed on an annexed document, "and also demanded the immediate payment of fifty-six thousand, one hundred twenty-eight and 59/100 ($56,128.59) dollars, being the aggregate amount of return premiums", and that on December 29, 1934, the Dock Board informed petitioner in writing that petitioner's appointment as agent of the Board was terminated.

Plaintiff further alleged that, as a result of the Dock Board's cancelling the contract which it had with plaintiff and of the Dock Board's having its insurance cancelled and rewritten through another agency, plaintiff was damaged in the sum of $39,209.66. It brought the present suit against the Dock Board, praying for judgment for that amount, alleging that the contract was cancelled without cause.

The Dock Board through counsel filed a number of exceptions, among these being an exception of no cause and no right of action. These exceptions were overruled, and defendant answered, admitting that it had signed and executed the contract dated April 7, 1931, which plaintiff relied upon. It admitted that it had notified the plaintiff in writing on or about June 12, 1934, that it did not care to renew certain insurance policies; that on December 12, 1934, it wrote plaintiff demanding cancellation of all policies and demanding the immediate payment of $56,128.59, the aggregate amount of return premiums; and

admitted further that on December 29, 1934, it informed plaintiff in writing that plaintiff's appointment as agent of the Board was terminated.

The Dock Board in answer to plaintiff's demand denied that it owed plaintiff anything and set up the following defenses:

(1) That the instrument sued on does not constitute, and never constituted, a valid and legal contract between plaintiff and defendant, because the defendant is an agency of the State of Louisiana and is forbidden by the Constitution and laws of the state to enter into such an agreement; (2) that it had the right at any time it saw fit to cancel any of the policies at the customary short rate; (3) that defendant is a state agency which was created and has its existence under and by virtue of certain acts of the Legislature passed pursuant to the Constitution of the state, and that it performs only governmental functions of the State of Louisiana.

The Dock Board especially pleaded that the instrument sued on does not constitute, and never constituted, a valid and legal contract between it and the plaintiff "because defendant was and is without authority under, and was and is forbidden by, the Constitution and laws of the State of Louisiana to enter into such an agreement as is set forth in said document 'Plaintiff's Exhibit No. 1', and said document, and the terms and provisions thereof are not and never have been binding upon defendant or upon plaintiff".

The defendant especially alleged in its answer that each of the policies which were written through plaintiff as its agent and which were cancelled by defendant contained a provision "giving to defendant the right, at any time it saw fit, to cancel said policies at what is known as the 'Customary Short Rate'; that defendant had previously paid the full premiums for the full term of each of said policies and that the $56,128.59 referred to in said Article XIII [of plaintiff's petition] represents the amount of returned premiums to which defendant was entitled, at customary short rate, on the cancellation of said policies". It admitted that it subsequently placed all of its insurance with another insurance agency, and averred that it had a right to do so "without thereby becoming liable to plaintiff in any amount whatsoever".

In the alternative, and only in the event that the defenses set out above should be held invalid, the defendant especially averred that the instrument sued on "never did constitute a valid and binding contract between plaintiff and defendant because there was no consideration therefor, in that all of the matters and things which, according to the language of said document, plaintiff bound and obligated itself to do and perform, were and are matters and things which were and are customarily performed by insurance agents and brokers or by insurance companies from which policies are obtained, without any charge or expense whatever to the insured".

There was judgment in the district court in favor of plaintiff and against the defendant for $15,290.14, from which judgment the defendant appealed. The plaintiff answered the appeal, praying that the judg-

ment be amended by increasing the amount of the award from $15,290.14 to $39,209.66. The agreement entered into between the plaintiff and the defendant on April 7, 1931, is evidenced by a written instrument which reads in full as follows:

"This agreement, made and entered into this seventh day of April, 1931, by and between Board of Commissioners of the Port of New Orleans, an agency of the State of Louisiana (Hereinafter sometimes referred to as the 'Board'), party of the first part, and the Hartwig Moss Insurance Agency, Ltd., a corporation organized and existing under and by virtue of the laws of the State of Louisiana, with its domicile in the City of New Orleans (Hereinafter sometimes referred to as the 'Agent'), party of the second part.

"WITNESSETH:

"1. The Board hereby appoints the Agent its agent to handle the writing and renewing of all its insurance, and to attend to such matter as may arise in connection with insurance during the term of the Agency. It shall be the duty of the Agent to endeavor to secure policies of insurance for the Board to the amounts and against the risks which the Board shall from time to time determine; to keep the Board fully advised at all times as to the amount of insurance coverage and risks covered thereby; to arrange for timely renewals of all expiring insurance, or else to notify the Board of expirations and of its inability to renew the same; to advise the Board with respect to all pertinent facts affecting its insurance and the rates thereof; to assist the Board in the adjustment of any losses under insurance and in the collection of all amounts due from insurance companies; and, generally, to perform such services as are usually performed by insurance brokers.

"2. That Agent agrees that during the term of its agency it will maintain an efficient, active inspection and engineering force, competent to fully advise the Board on such engineering questions as may arise affecting the Board's insurance or the rates thereof.

"3. All insurance procured by the Agent for the Board shall, as far as possible, be placed with companies authorized to do business in Louisiana and be subject to the approval of the Board. The Agent shall not be responsible for the solvency or default of any insurance companies, or for its failure to procure insurance requested by the Board, provided, however, that the Agent used reasonable care in procuring or in attempting to procure insurance, as the case may be. If at any time the Agent procures insurance in any company or under conditions not acceptable to the Board, and the Board so notifies the Agent, it shall be the duty of the Agent to cancel said insurance and, if possible procure other insurance in place thereof in companies and/or with conditions, as the case may be, acceptable to the Board.

"4. The Board agrees that during the employment of the Agent all insurance written for account of the Board will be placed through the Agent.

"5. The agent shall receive no compensation from the Board for its services here-

under. The Agent shall, however, be entitled to retain for itself all commissions and payments which it may earn in placing the insurance of the Board, whether such insurance be placed by the Agent in companies directly represented by the Agent, or such insurance be placed by the Agent as a broker in other companies.

"6. The term of employment of the Agent hereunder shall be five (5) years from the date hereof."

█ It has been repeatedly held by this court that the Board of Commissioners of the Port of New Orleans, ordinarily referred to as the Dock Board, is a state agency. Duffy v. City of New Orleans, 49 La.Ann. 114, 21 So. 179; State ex rel. Tallant v. Board of Commissioners of the Port of New Orleans, 161 La. 361, 108 So. 770; Miller v. Board of Commissioners of the Port of New Orleans, 199 La. 1071, 7 So. 2d 355.

In State ex rel. Tallant v. Board of Commissioners of the Port of New Orleans, supra, this court through its organ, Justice St. Paul, said, with reference to the purpose of the creation of the Board and of its status and the nature of the property under its administration, that the Board "is not a corporation but a mere state agency; that the property under its administration is not its own but public property; that the purpose for which defendant was created was to 'remove the obstacles' in the way of the advancement and prosperity of the port of New Orleans and lighten the burden on its commerce by reducing expenses and selecting competent employees. So that when the General Assembly of the state (now 'the Legislature') deals with the affairs of the board of commissioners of the port of New Orleans, it is as a master speaking to his servant with respect to that which is the master's own. Its commands in such matters transcend, as it were, the domain of ordinary legislation; it then speaks with dual authority, that of sovereign and that of master [161 La. 361, 108 So. 771]."

While, as said in the Tallant case, the Dock Board is not in the true sense a corporation, yet, according to Act 70 of 1896, as amended by Act 14, Extra Session of 1915, the Board enjoys "all the rights, powers and immunities incident to corporations." Under that act, the Board is vested with the power, and it is made its duty, "to have charge of, and administer the public wharves and landings of the Port of New Orleans", and, under Section 8 of that act, it is authorized to "prescribe rules to govern its meetings; shall keep suitable offices convenient to the business center of the City of New Orleans; shall employ all necessary clerical and other employees and when necessary a separate attorney; fix the compensation of all such, and determine within their discretion the beginning and the termination of employment of all who render services to said Board."

The major defense urged by the Dock Board is that, being a mere state agency and vested with no power or authority to act or speak except for the state, it had no express or implied authority to employ plaintiff as its agent for a period of five years to procure the issuance of all insurance policies it might require during that

period of time, regardless of conditions which might subsequently arise, and that its agreement to do so was ultra vires and contrary to public policy.

Counsel for the Dock Board concede, of course, that the Board had the power and authority to enter into contracts relating to such business affairs as are entrusted to it. It has express authority to employ all necessary clerical and other employees as it sees fit and to fix their compensation. Counsel's contention is that all employees of the Board hold their offices or positions at the pleasure of the Board, except in cases where the employees are protected by civil service laws of the state. They say, and this is conceded by counsel for plaintiff, that the rules and regulations relating to civil service do not apply to plaintiff.

The Dock Board has authority to have the property administered by it insured for one, three, or five years as it may see fit. It may take out insurance for one year, three years, or five years, and procure the issuance of policies for such terms as it deems best for the interest of the Board. Unquestionably it is vested with authority to employ an insurance agent or broker to procure the issuance of such policies. If the agreement entered into by the Board with plaintiff on April 7, 1931, had gone no further than that, its validity and binding effect could not be questioned. But the agreement went much further. The Board not only employed plaintiff to procure the issuance of such insurance policies as it then required, but agreed that during the period of employment, which was five years, all insurance written for its account

would be placed through plaintiff as its agent, regardless of conditions which might subsequently arise making it advantageous from a financial standpoint for the Board to have its insurance written through another agent.

In other words, it not only employed plaintiff to procure for it the issuance of such insurance policies as it then needed, but agreed that plaintiff's employment should be continuous for a period of five years. This latter is the objectionable feature of the agreement.

The facts are that, shortly after the agreement was entered into, plaintiff procured the issuance of insurance policies amounting to approximately $13,000,000 covering the property administered by the Dock Board, and the record indicates that some of the policies, perhaps the major portion of them, were written for a term of three years. The basic rate of the insurance procured was $1.40, and each of the policies contained the usual stipulation that the insured might, at any time it saw fit, cancel the policy and upon its cancellation should be entitled to a return of the unearned portion of the premiums at the customary short rate. The record shows that in 1934 the Dock Board declined to renew some of the policies which had been procured for it by the plaintiff and, exercising its privilege to cancel, ordered cancelled a number of the other policies and demanded the return of the unearned portion of the premiums, and that finally it terminated plaintiff's appointment as its agent.

The record discloses also that the insurance required by the Board was rewritten through another agency at the same basic rate, $1.40, but that, within a short time after the new policies were written, the basic rate for the insurance was reduced from $1.40 to $1.1816, and the Dock Board was given the benefit of the reduced rate. This reduction resulted in a great financial saving to the Dock Board.

The record shows further that this reduction was obtained through the efforts of the insurance agency which wrote the new policies. This agency wrote an exhaustive brief setting forth the reasons why the old rates were too high and should be reduced. This brief was submitted to the Louisiana Rating & Fire Prevention Bureau, and, as stated, the rate was reduced in the early part of January, 1935. It seems to have been the brief submitted by Meyer, Whitty & Hodge, the agency through which the policies were rewritten, which convinced the Rating Bureau that the old rates were too high.

Mr. Irving Moss, president of the plaintiff insurance agency, testified that, prior to the date on which the old policies were cancelled, he was making efforts to have the rate reduced, and that he so notified Mr. McKay, general manager of the Dock Board. But the fact remains that the plaintiff insurance agency had not been able to procure a reduction in the rates prior to the date on which plaintiff's appointment as agent was terminated by the Board.

■ Since there is nothing to show to the contrary, we must assume that the Dock Board acted in good faith when it refused to renew some of the old policies and cancelled others, and, finally, when it terminated plaintiff's appointment as its agent. It is quite evident that the change of agency resulted beneficially to the Dock Board.

■■ The Dock Board acts not for itself but for the state. It represents the general public, which is vitally interested in the administration of all public affairs. To permit a state agency, such as the Dock Board, to contract away its right to remove its employees whenever it deems it proper to do so for the public interest clearly would be against the public policy of the state. Public policy forbids such boards to tie their own hands and the hands of their successors by entering into contracts of employment with their servants for definite periods of time. Such contracts are ultra vires.

In Kirkpatrick v. City of Monroe, 157 La. 645, 102 So. 822, 823, the facts were that the city employed Kirkpatrick as consulting and supervising engineer to design and furnish plans, specifications, and recommendations as to certain proposed improvements, betterments, and extensions, and to supervise and superintend the construction of the same when undertaken. At the time Kirkpatrick was employed, the mayor and the city council contemplated submitting to the voters and property taxpayers the proposition to incur bonded indebtedness and to use the proceeds of the bonds to make extensive improvements. Kirkpatrick was employed for a period of four years at a salary of $10,000 per year. He was to plan and supervise the construc-

tion of the improvements contemplated, and furthermore he was employed to design, prepare, and furnish detailed plans, specifications, etc., for all improvements, extensions, and betterments to the utilities and public works, "or new or additional public works, of said city; proposed or contemplated within four years" from the date of his employment. His contract further provided that during the said four-year period of employment he should also perform and discharge "the duties legally devolving upon the city engineer of said city, and shall also, if called upon by said city to do so, direct the operations and maintenance of all the utilities and public works of said city, supervising and directing all employees engaged in the service of such utilities and public works, as well as the purchase of supplies, equipment, and materials for same, and shall also generally aid the mayor and council of said city by advice, investigation, cooperation, and counsel, in the administration of any department of the activities of said city not specifically mentioned herein, whenever by them called upon to do so."

The bonds mentioned in the contract of employment, which was in the form of an ordinance, were voted by the taxpayers, and a part of the public improvements for which they were voted had been planned and constructed when the consulting engineer was discharged. He brought suit against the city for his salary for the unexpired term of the employment. The city excepted to his petition on the ground that it set out no cause of action. This excep-

tion was maintained by the lower court, and the judgment was affirmed by this court.

This court held that the City of Monroe had power to contract, but said: "However, the power to contract may be used only as occasion arises as a means to accomplish the ends which the city is authorized to accomplish. The city is authorized, for instance, to erect for its own needs a system of waterworks. If it should undertake to erect such a system, unquestionably it would have the power to contract with an engineer to plan and supervise the construction of the system. Likewise, it is authorized to erect an electric light plant, and, upon undertaking to do so, it would have power to enter into a contract with an engineer to plan and supervise the construction of the plant. However, this power is such that upon the completion of the improvement the contract must end, for the power is merely an incident to the power to make the improvement."

The court held that the exception of no cause of action was well founded, saying: "The city was not authorized by its charter, or any law of the state, to enter into any such agreement. The power exercised is entirely different from the incidental power to enter into a contract with an engineer to prepare plans and specifications for the construction or betterment of an electric light plant or waterworks system, or similar public improvement, in contemplation of construction, and should not be recognized by the courts, unless granted in express terms or by clear implication."

The court made it clear that it did not mean to hold that the city council could not employ a person to discharge certain duties as occasion for their discharge might from time to time arise. The ruling in that case is applicable to the case at bar. Certainly the Dock Board was vested with power and authority to employ an insurance agent or broker to procure for it such insurance as it might need at a specified time. But it was not vested with authority to employ an agent to procure for it such insurance as it might need from time to time and as occasion might arise in the future. If it had authority to employ the plaintiff as its agent for a period of five years, it also had authority to employ an attorney-at-law, an architect, a building contractor, or a consulting engineer for the same length of time or even for a longer time. It was never contemplated by the lawmakers that such could be done.

The legal principle announced in the Kirkpatrick case has been discussed in a number of more recent cases. Potts v. Morehouse Parish School Board, 177 La. 1103, 150 So. 290, 291, 91 A.L.R. 1093, was a case where a parish school board employed an assistant superintendent of schools for a definite period of time and discharged him prior to the expiration date of his contract. Potts sued the school board for his salary, and it was held that a school board employing an assistant superintendent of schools had no authority to fix by resolution the term of the appointee's incumbency, and therefore the board could, notwithstanding the resolution, abolish the office and rescind the con-

tract before the term expired. This was upon the principle that the power of an appointing authority to remove an officer is an incident to the power to appoint, where the term is not prescribed by law. In the course of its opinion this court said: "The implied power to remove cannot be contracted away so as to bind the appointing authority to retain a minor officer or employee for a definite, fixed period."

One of the cases cited by the court in support of its conclusions in that case was Kirkpatrick v. City of Monroe, supra.

In Garnier v. Louisiana Milk Commission, 200 La. 594, 8 So.2d 611, it was held that the state milk commission in employing a secretary had no authority to fix by resolution the term of the secretary's office, and hence the commission could, notwithstanding its contract fixing the secretary's term, rescind the contract before the term expired (citing among other cases those of Potts and Kirkpatrick, supra). See also Higginbotham v. City of Baton Rouge, 190 La. 821, 183 So. 168.

In Ehret v. Police Jury, 136 La. 391, 67 So. 176, the police jury appointed a secretary for a period of four years, and, after the secretary had served for five months, he was discharged. He sued the police jury for the balance of his salary for the four-year term. The court sustained an exception of no cause of action, holding that the power of removal conferred by law upon police juries enters as much into the employment of a secretary as does the power of appointment, and a police jury has no capacity to avoid the law or abrogate its own functions with respect to

either, and the court said: "If it were otherwise, an incoming police jury might impose upon its successors in office a secretary who would be unacceptable to the new members and out of sympathy with the policy of the body."

Counsel for plaintiff say that the rulings in the Potts case, the Milk Commission case, and the Ehret case are not applicable to the case at bar for the reason that in those cases the court had for consideration the question whether public boards or commissions were authorized to discharge minor officers where their terms were not fixed by statute. It is true that in those cases minor officers were involved, but the legal principle involved in those cases is also involved in the case at bar. Counsel for plaintiff say in their brief at page 15: "We have no quarrel with the cases cited by Defendant which held that officers and employees of the State hold their positions at the pleasure of the Board. That is clearly good law, but has no application to the facts presented here. The Court is dealing not with the relationship of employer and employee, but with the question of the binding effect of a contract made by an independent contractor with the Board."

Conceding without holding that plaintiff was an independent contractor, the fact remains that it was employed by the Dock Board as its agent. The relationship of employer and employee existed, even though it be said that the plaintiff was an independent contractor. "An independent contractor is one who renders service in the course of an occupation representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished." See "Independent Contractor" in 21 Words and Phrases, Perm.Ed. p. 100.

Counsel for plaintiff call attention to Section 8, as amended by Act 14 of the Extra Session of 1915, which provides among other things that the Dock Board "shall employ all necessary clerical and other employees and when necessary a separate attorney; fix the compensation of all such, and determine within their discretion the beginning and the termination of employment of all who render services to said Board." The trial judge seems to have construed that provision to mean that, at the time the Board employs an individual to render services, it may then fix a definite period of time during which the employment is to continue. We do not concur in that construction of the act. If that construction be correct, the Board could employ a common laborer, a bricklayer, an attorney, or an architect for a definite period of five years or even longer. Such, we think, was never contemplated by the Legislature, for certainly it did not intend to lay down a rule which would violate the established public policy of the state.

For the reasons assigned, the judgment appealed from is reversed and set aside, and plaintiff's suit is dismissed at its costs.

PONDER, J., takes no part.

FOURNET and HAMITER, JJ., concurred.