JOSEPH F. UDDO, JR, M.D.

VERSUS

JEFFERSON PARISH HOSPITAL SERVICE
DISTRICT NO.2 D/B/A EAST JEFFERSON
GENERAL HOSPITAL

NO. 22-CA-403

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 790-224, DIVISION "E"
HONORABLE FRANK A. BRINDISI, JUDGE PRESIDING

April 12, 2023

**ROBERT A. CHAISSON**
**JUDGE**

Panel composed of Judges Fredericka Homberg Wicker,
Robert A. Chaisson, and John J. Molaison, Jr.

**AFFIRMED**
    **RAC**
    **FHW**
    **JJM**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Alexis Barteet
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
JOSEPH F. UDDO, JR, M.D.
    Bobby Ray T. Malbrough

COUNSEL FOR DEFENDANT/APPELLANT,
JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO.2 D/B/A EAST
JEFFERSON GENERAL HOSPITAL
    Daniel E. Buras, Jr.
    Matthew A. Sherman
    Patrick R. Follette
    Nicholas R. Varisco

**CHAISSON, J.**

In this case concerning an alleged breach of contract, Jefferson Parish Hospital Service District No. 2, d/b/a East Jefferson General Hospital ("EJGH"), appeals a June 3, 2022 judgment of the trial court in favor of Dr. Joseph F. Uddo, Jr., in the amount of $453,375.00, together with legal interest from the date of judicial demand. The judgment also dismisses EJGH's reconventional demand with prejudice. For the following reasons, we affirm the judgment of the trial court.

**BACKGROUND**

On December 12, 2013, EJGH, through its then President and Chief Executive Officer Dr. Mark Peters, and Dr. Uddo entered into two written agreements, the Emergency Preparedness On-Call & Management Services Agreement and the Clinical Advisor to Chief Executive Officer Agreement.

Pursuant to the Emergency Preparedness Agreement, Dr. Uddo provided day-to-day administrative and management services related to emergency preparedness, support for EJGH's response to disaster, and on-call coverage services. The management services were limited to no more than 65 hours a month unless otherwise approved, for which Dr. Uddo would be paid $225.00 per hour.[1] The initial term for the Emergency Preparedness Agreement ran from December 15, 2013, to December 14, 2015, with subsequent annual renewals. Following the initial term, each party was allowed to terminate the Agreement at any time, with or without cause, upon 180 days written notice. On June 28, 2016, the parties executed an Amendment to this Agreement. Under the Amended agreement, the initial term was to run to June 30, 2019, with subsequent automatic

---

[1] The Agreement sets forth separate compensation for the on-call services provided at a rate of $1,000.00 per seven day week, pro-rated for each day Dr. Uddo was on call and available to perform the services required. Dr. Uddo does not seek recovery for damages under this portion of the agreement, though it is subject to EJGH's demand in reconvention.

annual renewals. Following June 30, 2019, either party could terminate the Agreement at any time, with or without cause, upon 180 days written notice.

Sometime in April 2017, Dr. Uddo was advised that the new CEO of EJGH, Mr. Gerald Parton, had concerns regarding the agreements entered into by Dr. Peters on behalf of EJGH. On June 5, 2017, Dr. Uddo and EJGH decided to suspend the agreements to give both parties an opportunity to address concerns about them. On October 18, 2017, EJGH sent Dr. Uddo a letter terminating both agreements.

On December 7, 2018, Dr. Uddo filed a Petition for Damages for Breach of Contracts against EJGH seeking recovery for the loss of income for payment of services under the Emergency Preparedness Agreement and Clinical Advisor Agreement.[2]

EJGH filed an answer to the petition raising numerous affirmative defenses, and also a demand in reconvention alleging that Dr. Uddo breached the contractual agreements by performing work in excess of the hours permitted without prior approval from the CEO.

Following a trial on the merits, the trial court rendered judgment in favor of Dr. Uddo. EJGH's timely appeal followed.

On appeal, EJGH raises as legal error: the trial court's interpretation of the Emergency Preparedness Agreement; the trial court's finding that the Emergency Preparedness Agreement was valid under Louisiana public policy or under EJGH's policies and procedures; the trial court's finding that Dr. Uddo was not legally estopped from seeking future damages under the Emergency Preparedness Agreement despite the June 5, 2017 agreement to suspend the Agreement; and, the trial court's granting of Dr. Uddo's breach of contract claim pursuant to La. C.C.

---

[2] Although Dr. Uddo sought damages for loss of income pursuant to the Clinical Advisor Agreement, he subsequently voluntarily dismissed those claims prior to trial.

art. 2749 even though that statute was not pled or argued by Dr. Uddo. EJGH also argues that the trial court factually erred when it failed to find that EJGH properly terminated the Emergency Preparedness Agreement for cause, and in dismissing EJGH's reconventional demand.

## DISCUSSION

EJGH assigns as error multiple legal determinations by the trial court, including the interpretation of the Emergency Preparedness Agreement. Appellate review regarding questions of law is simply a review of whether the trial court was legally correct or incorrect. *Anderson v. Dean*, 22-233 (La. App. 5 Cir. 7/25/22), 346 So.3d 356, 364. On legal issues, the appellate court gives no special weight to the findings of the trial court, but exercises its constitutional duty to review questions of law *de novo* and renders judgment on the record. *Id.* With regard to the assigned errors of fact, factual determinations are reviewed by the appellate court under the manifest error or clearly wrong standard of review. *Quintanilla v. Whitaker*, 21-160 (La. App. 5 Cir. 12/1/21), 334 So.3d 892, 893.

*Duties Under the Emergency Preparedness Agreement*

EJGH first argues that the trial court incorrectly interpreted the Emergency Preparedness Agreement. More specifically, EJGH argues that the trial court erred in interpreting Section 2.1 of the Emergency Preparedness Agreement to mean that EJGH and/or its CEO did not have the authority to alter or reduce Dr. Uddo's duties listed in the attached Exhibit "A" and therefore EJGH was not in breach of the contracting agreement when it zeroed out those duties and terminated the contract in October of 2017.

Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. Each provision in a contract must be interpreted in light of other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. The words of a contract must be given

their generally prevailing meaning. La. C.C. art. 2047. When the words of the contract are clear, unambiguous, and lead to no absurd consequence, no further interpretation may be made or consideration of extrinsic evidence be had in search of the parties' intent, and the contract must be enforced as written. *All Am. Healthcare, L.L.C. v. Dichiara*, 18-432 (La. App. 5 Cir. 12/27/18), 263 So.3d 922, 928; La. C.C. art. 2046.

The relevant language of the Emergency Preparedness Agreement states the following:

> 2. PHYSICIAN's Responsibilities, Duties, and Qualifications.
>
> 2.1    Management Services.  HOSPITAL hereby appoints PHYSICIAN, and PHYSICIAN hereby accepts such appointment, to provide certain day-to-day administrative and management services related to Emergency Preparedness for and on behalf of HOSPITAL assigned from time to time by the CEP which may include specifically delineated and defined duties within Exhibit A, attached hereto and made a part of this Agreement.
> …
>
> EXHIBIT "A"
>
> Emergency Preparedness Director Duties
>
> HOSPITAL hereby appoints PHYSICIAN, and PHYSICIAN hereby accepts such appointment, to provide certain day-to-day administrative and management services related to Emergency Preparedness for and on behalf of HOSPITAL as are specifically delineated below … and as may be modified from time to time upon mutual agreement of the HOSPITAL and PHYSICIAN, and to assist the HOSPITAL in making certain operational improvements with respect to the HOSPITAL's continuing state of preparedness in advance of and during catastrophic events in order to attain the preparedness goals of the HOSPITAL and its medical staff as required by industry practice and state and federal law.
> … [3]

---

[3] Exhibit "A" also enumerates ten specific duties to be performed under "Management Services" including: acting as EJGH's Medical Director of Emergency Preparedness, assuming the primary leadership role in maintaining the hospital's emergency preparedness level consistent with State and Federal law and industry standards; checking daily status of weather reports, infectious disease outbreaks, and other threats that may affect the hospital's disaster response; acting as liaison with the Jefferson Parish Sheriff's Office emergency clinic and regional 9-1-1 providers; coordinating medical staff issues relating to EMS; and serving on the Hospital's Emergency Preparedness Committee and Incident Command Team.

EJGH argues that the language of section 2.1 requires the CEO to affirmatively task the physician with day-to-day duties and allows the CEO the discretion to unilaterally change and terminate those duties. In support of this interpretation, EJGH cites the testimony of Mr. Jim Hritz, the in-house counsel for EJGH at the time the contract was drafted. Such testimony is extrinsic evidence of the parties' intent that is only appropriate where the language of the contract is unclear or ambiguous, which EJGH has not argued.

Upon *de novo* review of the contract, we find no ambiguity in the language of Section 2.1 or Exhibit "A," which is expressly incorporated in and made part of the Emergency Preparedness Agreement. Exhibit "A" sets forth clear duties to be performed by the physician, and more importantly, provides that those duties "may be modified from time to time upon mutual agreement of the HOSPITAL and PHYSICIAN." This language is clear and unambiguous, that any alteration of the duties to be performed by the physician is to be by mutual agreement. The interpretation proposed by EJGH disregards this clear language and attempts to create ambiguity where there is none. We find no error in the trial court's interpretation of Section 2.1 of the Emergency Preparedness Agreement.

*Validity of Emergency Preparedness Agreement Under Louisiana Law*

We next considered EJGH's argument that the trial court legally erred in finding the Emergency Preparedness Agreement was valid under Louisiana public policy or under EJGH's Policies and Procedures. Specifically, EJGH argues that the Emergency Preparedness Agreement should not be interpreted as providing a fixed-term through June 30, 2019, because under Louisiana law, a public entity has no authority to fix the term of a services contract with any appointee, employee, or independent contractor.

In support of this argument, EJGH cites no statute or code, but rather cites the cases of *Potts v. Morehouse Parish School Board*, 177 La. 1103, 1106 (1933);

*Garnier v. Louisiana Milk Commission*, 200 La. 594, 602 (1942); *Hartwig Moss Insurance Agency v. Board of Commissioners*, 206 La. 395, 397-403 (1944); and *Shows v. Morehouse General Hospital*, 463 So.2d 884 (La. 2nd Cir. 1985). We find these cases to be factually distinguishable from the suit before us. *Potts* concerned the authority of a school board to appoint a school superintendent. 177 La. at 1105. *Garnier* concerned an injunction to prevent the removal of a legally appointed secretary of the Louisiana Milk Commission. 200 La. at 598. *Hartwig* concerned the authority of the Board of Commissioners of the Port of New Orleans to employ and appoint an exclusive insurance agent. 206 La. at 397. *Shows*, the only case cited by EJGH that involves a hospital, concerned the authority of a board of commissioners operating a public hospital to fire the full-time director of the hospital without providing two years notice or two years salary per the terms of their agreement. 463 So.2d at 885. We do not find these cases, which have clearly distinguishable facts from the case before us, applicable or persuasive in this matter involving the part-time employment of an independent contractor. We find this argument to be without merit.

*Validity of Emergency Preparedness Agreement Under EJGH Policies*

EJGH next argues that the contract was invalid because the former CEO and President, Dr. Peters, did not have the authority to enter into such an agreement under EJGH's Policies and Procedures, specifically Section III of the EJGH Principal Purchasing Policy, which requires contracts for services like the Emergency Preparedness Agreement and the Clinical Advisor Agreement to be approved by the Board of Directors if the fair market value of those services is over $100,000.00.

The parties introduced into evidence a copy of East Jefferson's Principal Purchasing Policy (No. MM-4) Section III (F), which provides:

The President and CEO must review and may approve and sign requisitions for:

1. Each Purchased services that cost up to $500,000.00 on an annual basis.

2. Each Professional/Clinical and Consulting Services that cost up to $100,000.00 on an annual basis.

…

The policy also provides that any acquisitions in excess of these specified limits may be approved by the Board of Directors after receiving the recommendation of the President.

This argument raised by EJGH is in the nature of an affirmative defense. A party defendant who asserts an affirmative defense bears the burden of proof thereof. *Fin & Feather, LLC v. Plaquemines Par. Gov't*, 16-0256 (La. App. 4 Cir. 9/28/16), 202 So.3d 1028, 1034; La. C.C.P. art. 1005. Specifically, EJGH argues that the Emergency Preparedness Agreement is relatively null because Dr. Peters lacked authority to bind EJGH to the Agreement because the value of the contract exceeded the $100,000.00 limit for professional services contracts set forth in the above Purchasing Policy.

As the party bearing the burden of proof, EJGH was required to introduce evidence establishing the nature of the contract, the value of the contract, and the absence of board approval for the contract. Very little evidence was introduced regarding these elements, and with regard to the last element in particular, whether the Board knew of and/or approved the contract, the only evidence introduced is the largely hearsay and self-serving testimony of general counsel to EJGH, Mr. David Sherman, who testified that he was present at an April 2017 meeting of the Board when the Board purportedly first learned of the existence of the contracts with Dr. Uddo. In contrast, Mr. Parton, the CEO who began working in May of 2017 following Dr. Peter's departure, testified that the Board was very committed

to the hospital and very involved in overseeing hospital operations. Dr. Uddo testified that he made disaster preparedness presentations to the Board of Directors, and also that a member of the Board of Directors that he worked with often, Michael McMinn, was aware of the contracts he signed with Dr. Peters back in 2013. No members of the Board testified at trial, and no other extrinsic evidence such as Board meeting minutes were introduced. Upon *de novo* review of the evidence, we do not find the Emergency Preparedness Agreement relatively null because EJGH has failed to show that Dr. Peter's lacked the authority to enter into the agreement.

*Estoppel*

EJGH next argues that the trial court legally erred in finding that Dr. Uddo was not legally estopped from seeking future damages under the Emergency Preparedness Agreement despite his agreement with EJGH on June 5, 2017, to suspend the Agreement.

Estoppel is not favored under Louisiana law and may only be applied as a doctrine of last resort. *Dye v. Ipik Door Co., Inc.*, 570 So.2d 477, 479 (La. App. 5 Cir. 11/14/90). The party invoking estoppel bears the burden of proving the facts on which it is founded. *Gunderson v. F.A. Richard & Associates*, 09-1498 (La. App. 3 Cir. 6/30/10), 44 So.3d 779, 789. Equitable considerations and estoppel cannot prevail in a conflict with the positive law. *Id.* The applicable positive law in this case may be found in La. C.C. art. 1967.

Pursuant to La. C.C. art. 1967, a party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. This is so called detrimental reliance or promissory estoppel. In order to prove a claim of detrimental reliance, EJGH had to prove: (1) a representation by conduct or word, (2) justifiable reliance, and (3) a change in position to one's detriment because of

the reliance. *Teen Town Prods., L.L.C. v. Scurlock*, 15-454 (La. App. 5 Cir. 12/23/15), 182 So.3d 1208, 1217. There is no evidence in the record indicating that EJGH changed its position to its detriment because of the June 5, 2017 agreement. Prior to this agreement, EJGH claimed it was going to send Dr. Uddo a termination notice. A few months later, EJGH sent him a termination letter anyway. There was no detriment to EJGH. We find this assignment of error to be without merit.

*Breach of Contract Under La. C.C. Art. 2749*

EJGH argues that the trial court legally erred in granting Dr. Uddo's breach of contract claim pursuant to La. C.C. art. 2749 even though that statute was not pled or argued by Dr. Uddo. Appeals are taken from the judgment, not written reasons for judgment. La. C.C.P. art. 1918. The trial court's reliance on La. C.C. art. 2749 is harmless error in this instance. Dr. Uddo's remedy may be found under the general rules applicable to conventional obligations, including La. C.C. art. 1994, which states that an obligor is liable for the damages caused by his failure to perform a conventional obligation. This assignment of error is without merit.

*Termination for Cause*

EJGH argues that the trial court manifestly erred when it failed to find that it terminated Dr. Uddo for cause under Section 5.2(d) of the Agreement. That portion of the Emergency Preparedness Agreement provides "… [the] Agreement may be immediately terminated by HOSPITAL upon the occurrence of … PHYSICIAN's material breach of any of its obligations under this Agreement. …" EJGH argues that Dr. Uddo materially breached the Agreement by working in excess of 65 hours per month without prior approval of EJGH and for failing to turn in his timesheets in a timely manner.

Section 3.2 of the Agreement, "Billing and Payment for Management

Services" provides:

> As full compensation from HOSPITAL for the Management Services
> provided for in Exhibit "A" herein PHYSICIAN shall be compensated
> at the rate of $225 per hour. PHYSICIAN may work approximately
> but not to exceed a maximum of 65 hours per month performing such
> Management Services, unless otherwise approved or requested by the
> HOSPITAL or the CEO. This maximum monthly average will not
> include worked time at the HOSPITAL performed by PHYSICIAN
> during a HOSPITAL declared disaster, which documented worked
> time shall be paid at the above hourly rate. PHYSICIAN shall
> separately document all such services on and PHYSICIAN will submit
> monthly time logs on the Log approved by the HOSPITAL attached
> hereto as Exhibit "B" or as changed from time to time by HOSPITAL
> reflecting actual time spent conducing Management Services by the
> 10th day of the following month. Payment of the amount supported by
> the monthly time logs shall be made no later than the 20th day of the
> month in which the approved time logs are timely submitted.
> PHYSICIAN understands and agrees that payment will be made only
> for those services performed hereunder for and on behalf of
> HOSPITAL and that are properly and adequately documented and
> timely submitted by physician.

This contractual language does not specify when or how the Hospital or CEO was

to approve hours worked in excess of the 65 hours specified. There is no

requirement that the approval be in writing, nor that it be given before the excess

hours were worked rather than upon receipt of the timesheet prior to payment.

The evidence concerning the approvals received by Dr. Uddo is mixed. Dr.

Uddo testified that he received approval, either written or verbal, for all of the

work he performed, even for those months were he performed management

services in excess of 65 hours per week. The termination letter makes no reference

to billing or termination for cause. There are handwritten approvals from Dr.

Peters for some, but not all, of the months in which the hours exceeded 65. The

forensic accountant who testified for EJGH, Dennis Tizzard, testified that he did

not know what kind of approval was required under the contract. With regard to

the timing of the submission of Dr. Uddo's logs, the evidence is also mixed. Dr.

Uddo testified that there were some months that he did not turn in the log before

the 10th day of the month; however, there are also emails in the record indicating a renegotiation of the format of the logs sometime in July of 2014. Notes on the log sheets themselves indicate that in some instances they may have been submitted timely but then resubmitted again at a later date for unknown reasons.

It is well settled that a court of appeal may not set aside a trial court's findings of fact in the absence of manifest error, or unless it is clearly wrong, and where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review. *Glob. Constr. & Equip., L.L.C. v. Rathborne Properties, L.L.C.*, 18-169 (La. App. 5 Cir. 5/29/19), 274 So.3d 837, 841, *writ denied*, 19-1096 (La. 10/8/19), 280 So.3d 172. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.* From the evidence presented, we do not find that the trial court manifestly erred in determining that Dr. Uddo was not in material breach of the Emergency Preparedness Agreement.

*Dismissal of Reconventional Demands*

Under this same rationale, we find no error in the trial court's dismissal of EJGH's demands in reconvention. Based on the evidence presented, a factfinder could reasonably conclude that Dr. Uddo received either verbal or written approval for all of the hours he worked under the Agreements and that he did not materially breach the agreements. Thus, the final assignment of error is without merit.

**CONCLUSION**

Upon *de novo* review of the record, we find no manifest or legal error in the judgment of the trial court. EJGH breached its agreement with Dr. Uddo when it terminated the Agreement without cause and without the 180 day written notice required. The Agreement is not null and void as contrary to public policy or under the Purchasing Policy. Dr. Uddo was not estopped from bringing a suit to recover

damages for EJGH's breach of the Agreement.  EJGH has failed to show Dr. Uddo

performed hours in excess of the 65 hour limit without the approval of Dr. Peters

or that Dr. Uddo was otherwise in material breach of the Agreements.  The

judgment of the trial court is affirmed.

**AFFIRMED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
CORNELIUS E. REGAN, PRO TEM

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **APRIL 12, 2023** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 22-CA-403

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE FRANK A. BRINDISI (DISTRICT JUDGE)
BOBBY RAY T. MALBROUGH (APPELLEE)      MATTHEW A. SHERMAN (APPELLANT)      PATRICK R. FOLLETTE (APPELLANT)

### MAILED

DANIEL E. BURAS, JR. (APPELLANT)
NICHOLAS R. VARISCO (APPELLANT)
ATTORNEYS AT LAW
ONE GALLERIA BOULEVARD
SUITE 1100
METAIRIE, LA 70001