| COASTAL CARGO COMPANY LLC | * | NO. 2024-C-0026 |
|---|---|---|
| | * | |
| VERSUS | | COURT OF APPEAL |
| | * | |
| BOARD OF COMMISSIONERS OF THE PORT OF NEW ORLEANS | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |

\* \* \* \* \* \* \*

APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2023-02511, DIVISION "M"
Honorable Paulette R. Irons, Judge
\* \* \* \* \* \*
**Judge Dale N. Atkins**
\* \* \* \* \* \*

(Court composed of Judge Rosemary Ledet, Judge Dale N. Atkins, Judge Rachael D. Johnson)

Peter B. Sloss
Gary J. Gambel
Timothy D. DePaula
Tarryn E. Walsh
Donald R. Wing
MURPHY, ROGERS, SLOSS, GAMBEL & TOMPKINS
701 Poydras Street
Suite 400, Hancock Whitney Center
New Orleans, LA 70139

A.M. "Tony" Clayton
D'Ann R. "Dee" Penner
CLAYTON FRUGÈ WARD
3741 Louisiana Highway 1 South
Port Allen, Louisiana 70767

COUNSEL FOR RELATOR, Coastal Cargo Company, L.L.C.

David L. Patrón
Stuart G. Richeson
Virginia P. Stewart
PHELPS DUNBAR LLP
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130


        COUNSEL FOR RESPONDENT, Board of Commissioners of the Port of New Orleans


**WRIT GRANTED; RELIEF DENIED**
**FEBRUARY 8, 2024**

DNA

RML

RDJ

The underlying dispute in this matter concerns allegations of breach of lease, unfair trade practices, and detrimental reliance. In its writ application to this Court, Relator, Coastal Cargo Company, L.L.C. ("Coastal Cargo"), seeks review of the trial court's January 3, 2024 judgment, which granted the "Motion to Strike the Jury Demand" ("Motion to Strike") filed by Respondent, the Board of Commissioners of the Port of New Orleans ("Port"). For the following reasons, we grant Coastal Cargo's writ application but deny relief.

**RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On March 22, 2023, Coastal Cargo filed a "Petition for Breach of Lease, Unfair Trade Practices, Detrimental Reliance and Damages" ("Petition"), naming the Port as a defendant. Subsequently, on July 17, 2023, Coastal Cargo filed a "First Amended Petition for Breach of Lease, Unfair Trade Practices, Detrimental Reliance and Damages." Therein, Coastal Cargo reaffirmed the allegations in its Petition and also requested a trial by jury. In response, the Port filed its Motion to Strike, wherein the Port contended, in pertinent part, that the trial court should strike Coastal Cargo's jury demand because the Port is a political subdivision, rather than a state agency, and La. R.S. 13:5105 (also known as the Louisiana

1

Governmental Claims Act) prohibits jury trials against political subdivisions. On December 14, 2023, the trial court held a hearing on the Port's Motion to Strike and orally granted the Port's Motion to Strike during the hearing. The trial court then signed a judgment granting the Port's Motion to Strike on January 3, 2024; and Coastal Cargo's timely writ application to this Court followed.

## DISCUSSION

In its writ application, Coastal Cargo asserts one assignment of error, contending that "[t]he trial court erred as a matter of law by finding, without specific authority and contrary to this Court's and the Louisiana Supreme Court's holdings otherwise, that the Port is a political subdivision, rather than a state agency, and granting the Port's [M]otion to [S]trike . . . , thus depriving Coastal Cargo of its fundamental right to a trial by jury." In its writ application, Coastal Cargo cites jurisprudence that has referred to the Port as a state agency rather than a political subdivision. In its opposition to Coastal Cargo's writ application, the Port again counters that it is a political subdivision and thus immune from jury trials under La. R.S. 13:5105. In support, the Port argues that it is a political subdivision due to its designation within the local government article of the 1974 Louisiana Constitution. In response to the jurisprudence cited by Coastal Cargo, the Port argues that those are cases that were either decided prior to the 1974 Louisiana Constitution or that erroneously relied on authorities from before the 1974 Louisiana Constitution.

### *Standard of Review*

Before turning to the merits, we consider the applicable standard of review. The sole issue presented by Coastal Cargo's writ application is whether the Port is a political subdivision of the State of Louisiana and is thus immune from a jury

2

trial per La. R.S. 13:5105. Our decision on this issue is not contingent upon our resolution of any dispute(s) regarding material facts. Rather, our review of the record reveals that determining whether the Port is a political subdivision presents a purely legal issue and a question of interpretation of the Louisiana Constitution and statutes. As this Court has held, when a matter "involv[es] no dispute regarding material facts, but only the determination of a legal issue, a reviewing court must apply the *de novo* standard of review, under which the trial court's legal conclusions are not entitled to deference." *Felix v. Safeway Ins. Co.*, 2015-0701, p. 6 (La. App. 4 Cir. 12/16/15), 183 So.3d 627, 631 (quoting *TCC Contractors, Inc. v. Hosp. Serv. Dist. No. 3 of Par. of Lafourche*, 2010-0685, p. 8 (La. App. 1 Cir. 12/8/10), 52 So.3d 1103, 1108). Further, as the Louisiana Supreme Court has explained, "[t]he interpretation of constitutional articles and statutes is necessarily a question of law to which the *de novo* standard of review is applied." *Crooks v. State through Dep't of Nat. Res.*, 2022-00625, p. 2 (La. 1/27/23), 359 So.3d 448, 450 (citing *Newman v. Marchive P'ship, Inc. v. City of Shreveport*, 2007-1890, p. 3 (La. 4/8/08), 979 So.2d 1262, 1265). Accordingly, we review this matter *de novo*.

***Louisiana Governmental Claims Act (La. R.S. 13:5105)***

As stated previously, a political subdivision of the state is immune from a jury trial when it is a defendant in a case according to La. R.S. 13:5105, which is known as the Louisiana Governmental Claims Act. That statute provides, in pertinent part, that "[n]o suit against a political subdivision of the state shall be tried by jury." La. R.S. 13:5105(A). A state agency does not have that same immunity though. *See* La. R.S. 13:5105(B). Therefore, to resolve whether the Port is subject to a jury trial in the underlying case brought by Coastal Cargo, we must

3

determine if the Port is a political subdivision or a state agency. To do so, we begin by looking to the Louisiana Constitution.

***The Louisiana Constitution***

The Louisiana Legislature created the Port via 1896 La. Acts 70, §1. That Act did not specify whether the Port was a state agency or a political subdivision. Thereafter, the 1913 Louisiana Constitution recognized the Port under the heading, "Board of Commissioners of the Port of New Orleans." La. Const. art. 321 (1913). Again, however, Article 321 did not designate whether the Port was a state agency or political subdivision. The 1921 Louisiana Constitution included the Port in the constitutional article titled "Administrative Officers and Boards." La. Const. art. 6, §16 (1921). In the 1921 Louisiana Constitution, the Administrative Officers and Boards Article followed Article V, which was the article providing for the Executive Branch, and preceded Article VII, which was the article providing for the Judiciary Branch.

Subsequently, the 1974 Constitution placed all deep-water port commissions in the article titled "Local Government." La. Const. art. VI, §43 (1974). Article VI allowed all existing port commissions to continue to exist and granted the Louisiana Legislature authority to confer additional powers to any port commission. La. Const. art. VI, §43(1) (1974). Additionally, Article VI of the 1974 Louisiana Constitution defined "political subdivision" as "a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions." La. Const. art. VI, §44(2). Article VI also included the definition of "[d]eep-water port commissions" as "those commissions or districts within whose territorial jurisdiction exist facilities capable of accommodating vessels of at least twenty-

4

five feet of draft and of engaging in foreign commerce." La. Const. art. VI, §44 (7) (1974).[1]

Of note, within the 1974 Louisiana Constitution, the Louisiana Legislature did not place deep-water port commissions in Article IV, which pertains to the Executive Branch. Article IV states, in pertinent part, that "[t]he executive branch shall consist of the governor, lieutenant governor, secretary of state, attorney general, treasurer, commissioner of agriculture, commissioner of insurance, superintendent of education, commissioner of elections, and all other executive offices, agencies, and instrumentalities of the state." La. Const. art. IV, § 1 (footnote omitted). Within Article IV are sections pertaining to other entities that are listed as state agencies according to the Office of the Louisiana Governor, such as the Secretary of State (§ 7), the Attorney General (§ 8), the Treasurer (§ 9), the Commissioner of Agriculture (§ 10), and the Commissioner of Insurance (§ 11). *See* OFFICE OF THE GOVERNOR, "State Agencies," https://gov.louisiana.gov.[2] If the Louisiana Legislature wanted deep-water port commissions to be considered state agencies, the Legislature would have included them with other state agencies in Article IV of the 1974 Louisiana Constitution as part of the executive branch of government.

Moreover, in the restructuring associated with the 1974 Louisiana Constitution, the Louisiana Legislature also enacted La. R.S. 18:1281, with a stated

---

[1] We note that Coastal Cargo does not dispute that the Port is a deep-water port.

[2] This Court can take judicial notice of government websites. *State v. Melendez*, 2024-0034, p. 3 (La. App. 4 Cir. 1/23/24), ___ So.3d ___, ___, n.5, 2024 WL 242867, at*2 n.5 (citing *Gniady v. Ochsner Clinic Found.*, 2023-0215, p. 3 (La. App. 4 Cir. 12/28/23), ___ So.3d ___, ___ n.3, 2023 WL 8946265, at *2 n.3).

"purpose . . . to implement Article VI, Section 22 of the Louisiana Constitution of 1974 by establishing a uniform procedure for the conduct of elections to authorize the issuance of bonds, the assumption of indebtedness, and the imposition or increase of taxes by political subdivisions." Louisiana Revised Statutes 18:1282 defines the term "political subdivision" and includes "a port board and a port commission" in that definition. Notably, following the 1974 Louisiana Constitution and the enactment of these statutes, the Louisiana Attorney General's office opined that *all* port commissions are political subdivisions and not part of the executive branch. *See* La. Atty. Gen. Op. No. 81-713A (1981), 1981 WL 154727 (reaffirming earlier opinions stating the same conclusion). In so concluding the Louisiana Attorney General's Office noted, in part, that the Louisiana Legislature did not include any port or port district in its reorganization of the executive branch in Title 36 of the Revised Statutes. *Id.* Title 36 of the Louisiana Revised Statutes is named "Organization of Executive Branch of State Government." La. R.S. 36:1-960. This restructuring by the Louisiana Legislature after the adoption of the 1974 Louisiana Constitution evidences further support for concluding that the Louisiana Legislature considered the Port to be a political subdivision, not a state agency, and thus did not place the Port (and other ports) in the executive branch.

Further, after ratification of the 1974 Louisiana Constitution, the Louisiana Legislature adopted other statutes applicable to the Port and created various other port districts. *See* La. R.S. 34:1, *et seq*. Regarding the Port, the applicable statute merely states that the Port is "continued" but does not categorize it as a state agency or political subdivision. La. R.S. 34:1. Though the Louisiana Legislature specifically designated some Louisiana ports as political subdivisions of the state

6

in the Louisiana Revised Statutes enacted after the 1974 Louisiana Constitution,[3] not all statutes creating port commissions explicitly declared that port commission to be a political subdivision of the state. *See* La. R.S. 34:3158 (creating the Caddo-Bossier Parishes Port Commission). Even without the specific designation, however, the Louisiana Second Circuit Court of Appeal held that the Caddo-Bossier Parishes Port Commission was a political subdivision. *See Cohort Energy Co. v. Caddo-Bossier Pars. Port Comm'n*, 37,449, p. 14 (La. App. 2 Cir. 8/20/03), 852 So.2d 1174, 1182 (finding the Caddo-Bossier Parishes Port Commission was a political subdivision and not part of the executive branch).

In reviewing these various acts of the Louisiana Legislature, we are mindful that "[l]egislation is a solemn expression of legislative will." La. C.C. art. 2. We conclude that by placing all deep-water port commissions in the Local Government article of the Constitution, the Louisiana Legislature demonstrated its intent that port commissions are political subdivisions of the State, not state agencies. Next, we consider what this Court and the Louisiana Supreme Court have said about these constitutional provisions and the Port.

***Jurisprudence***

In discussing the above changes to the Louisiana Constitution, this Court explained:

---

[3] *See* La. R.S. 34:201 (creating the Lake Charles Harbor and Terminal District); La. R.S. 34:241 (creating the Port of Iberia District); La. R.S. 34:321 (creating the Morgan City Harbor and Terminal District); La. R.S. 34:333.1 (creating the Abbeville Harbor and Terminal District); La. R.S. 34:334.1(creating the Vinton Harbor and Terminal District); La. R.S. 34:334.32 (creating the West St. Mary Parish Port, Harbor and Terminal District); La. R.S. 34:335.1 (creating the Central Louisiana Regional Port); La. R.S. 34:1701 (creating the St. Bernard Port, Harbor, and Terminal District); and La. R.S. 34:1351 (creating the Plaquemines Parish Port Authority).

Deep water port commissions and districts were dealt with *generally* in Article VI, Section 43, Part IV, and not individually. A review of the 1974 Constitution shows that the Constitutional Convention removed all *specific* provisions dealing with political subdivisions, including deep water ports, from the Constitution and placed them in the statutory law. The particular provisions of the Louisiana Constitution of 1921 pertaining to the Dock Board were made statutory by Article XIV, Section 19 of the Louisiana Constitution of 1974. They were thus de-constitutionalized rather than made autonomous. Their structure and organization, powers and functions, jurisdiction and membership may be modified by legislative action, albeit by a "super majority" vote. . . Deep water ports were placed in a separate part of the article because the Constitutional Convention was aware of the importance of these ports to the economy of the State of Louisiana and determined as a matter of policy their existence should be stabilized to a greater degree than the ordinary political subdivision by requiring a "super majority" two-thirds vote of the elected members of each house to affect their organization and structure, powers and functions, territorial jurisdiction and membership. Article VI, Section 43, Part IV, clearly did not have the purpose of giving deep water ports a status of something other than a political subdivision of the State of Louisiana.

*Bd. of Comm'rs of Port of New Orleans v. La. Comm'n on Ethics for Pub. Emps.*, 416 So.2d 231, 236 (La. App. 4th Cir. 1982).[4] This Court has also recognized the Port as a political subdivision in other opinions rendered since the adoption of the 1974 Louisiana Constitution. *See Bd. of Comm'rs of Port of New Orleans v. City of New Orleans*, 2015-0768, p. 2 (La. App. 4 Cir. 3/16/16), 186 So.3d 1282, 1284 (declaring, "[t]he Port of New Orleans is a political subdivision of the State of Louisiana"); *Bd. of Comm'rs of Port of New Orleans v. City of New Orleans*, 2013-0881, p. 1 (La. App. 4 Cir. 2/26/14), 135 So.3d 821, 822 (declaring, "[t]he Port of New Orleans is a political subdivision of the State of Louisiana"); and *Concrete*

---

[4] *Cf.* La. Const. art. IV, §21 (1974) (specifically stating that the Public Service Commission shall be in the executive branch and placing the Public Service Commission within Article IV, which is the executive branch section of the Louisiana Constitution). Thus, the Louisiana Constitution specified this Commission would be a state agency within the executive branch. Had the intent been for the Port to be designated as a state agency in the 1974 Constitution, the Louisiana Legislature would have accomplished this in the same manner.

*Busters of La., Inc. v. Bd. of Comm'rs of the Port of New Orleans*, 2010-1172, p. 2 (La. App. 4 Cir. 2/2/11), 69 So.3d 484, 486 (noting the Port is a political subdivision of the state).

In support of its argument that the Port is a state agency, not a political subdivision, Coastal Cargo cites *State ex rel. Tallant v. Board of Commissioners of Port of New Orleans*, 161 La. 361, 108 So. 770 (1926) (wherein the Court identified the Port as a state agency). However, the Louisiana Supreme Court issued its decision in *State ex. rel. Tallant* prior to the adoption of the 1974 Louisiana Constitution. Coastal Cargo also cites to *Shavers v. Sanders*, which this Court issued after the enactment of the 1974 Louisiana Constitution. *unpub.*, 1995-0798 (La. App. 4 Cir. 6/12/95). In *Shavers*, this Court found no error in the grant of a jury trial against the Port and, in reaching that conclusion, relied on *River Marine Contractors, Inc. v. Board of Commissioners of St. Bernard Port, Harbor & Terminal District*, 568 So.2d 620 (La. App. 4th Cir. 1990). In *River Marine Contractors, Inc.*, this Court held that the Port was a state agency while the St. Bernard Port, Harbor and Terminal District was a political subdivision. *Id.*, 568 So.2d at 622. However, the Court relied on case law that predated the 1974 Louisiana Constitution, including *State ex rel. Tallant. See also Hartwig Moss Ins. Agency v. Bd. Comm'rs of Port of New Orleans*, 206 La. 395, 19 So.2d 178 (1944) (noting the Port has repeatedly been held to be a state agency); *Fouchaux v. Bd. of Comm'rs of Port of New Orleans*, 186 So. 103 (La. App. Orl. 1939) (stating the Port is a state agency).

To the extent the Port was considered a state agency pursuant to the early Louisiana Constitutions and jurisprudence, we find that the Port's designation as a state agency did not continue with the ratification of the 1974 Louisiana

Constitution and La. R.S. 34:1, *et seq*. The Louisiana Legislature chose to include deep-water port commissions as part of Article VI pertaining to Local Government, thus indicating the Legislature's intent that the Port was not a part of the executive branch and not a state agency. Considering the 1974 Louisiana Constitution, *Board of Commissioners of Port of New Orleans v. Louisiana Commission on Ethics for Public Employees*, *Board of Commissioners of Port of New Orleans v. City of New Orleans*, *Concrete Busters of Louisiana, Inc. v. Board of Commissioners of the Port of New Orleans*, and La. Atty. Gen. Op. No. 81-713A, we conclude that the Port is a political subdivision and not a state agency. We note further support for our conclusion is the fact that the Port is not one of the enumerated state agencies on the website of the Louisiana Governor. *See* OFFICE OF THE GOVERNOR, "State Agencies," https://gov.louisiana.gov. Therefore, in light of the foregoing, La. R.S. 13:5105 specifically excludes a jury trial against the Port.

## CONCLUSION

For the foregoing reasons, we grant Coastal Cargo's writ application but deny the relief therein sought.

**WRIT GRANTED; RELIEF DENIED;**